TEXTILEATHER CORPORATION, A CORPORATION, RE-
SPONDENT, v. GREAT AMERICAN INDEMNITY COM-
PANY, A CORPORATION, DEFENDANT, AND AMERICAN
MUTUAL LIABILITY INSURANCE COMPANY, A COR-
PORATION, APPELLANT.

TEXTILEATHER CORPORATION, A CORPORATION, APPEL-
LANT, v. GREAT AMERICAN INDEMNITY COMPANY, A
CORPORATION, RESPONDENT, AND AMERICAN MU-
TUAL LIABILITY INSURANCE COMPANY, A CORPORA-
TION, DEFENDANT.

Argued May 10, 1931—Decided October 19, 1931.

For the Textileather Corporation, *McDermott, Enright &
Carpenter.*

For the American Mutual Liability Insurance Company,
*McCarter & English.*

For the Great American Indemnity Company, *Collins &
Corbin.*

The opinion of the court was delivered by

BODINE, J. The American Mutual Liability Insurance
Company appeals from a judgment entered at the Essex
Circuit in favor of the Textileather Corporation in the sum
of $2,900.66. The Textileather Corporation appeals from a
judgment of nonsuit entered in favor of the Great American
Indemnity Company.

The facts necessary to a decision of this case are few. Bruno Iannazzo, one of the plaintiff's employes, died of benzol poisoning on December 8th, 1927. Benzol poisoning is an occupational disease for which compensation may be had under the Workmen's Compensation law. There was an award of compensation by the bureau. The defendant, the American Mutual Liability Insurance Company insured the plaintiff's risk from November 18th, 1927, and was notified of the death of Iannazzo and defended the proceedings instituted to secure compensation. The compensation bureau found that Iannazzo contracted benzol poisoning in August of 1927, and that the result of said poisoning was that he died on December 8th, 1927. Iannazzo first went to work for the Textileather Corporation in August of 1927. Although in sound health at that time, he shortly thereafter complained of difficulty with his stomach, dizziness and other symptoms of the disease appeared. He, however, worked steadily until November 26th, 1927, when his condition became such that he was unable to work and after a few days was taken to the hospital where he died.

It is conceded that the dispute narrows to a question of when liability to make compensation attaches. Prior to November 18th, 1927, the plaintiff's insurance was carried by the Great American Indemnity Company. The American Mutual Liability Insurance Company attaches much importance to the bureau's finding of the time when the disease was contracted. In our view, that is of no importance in this case.

The plaintiff's motion for the direction of a verdict against the American Mutual Liability Insurance Company was based on two grounds: (1) that the evidence showed that the accident, or the disease, which caused Iannazzo to discontinue his employment, and from which he died on the 8th of December, occurred during the coverage of that defendant's policy of insurance; and (2) that the defendant is estopped to deny its liability, because it took over the entire defense of the proceedings brought against the plaintiff for compensation.

Judge Dungan granted the motion on the single ground of estoppel. *Horn* v. *Commonwealth,* 105 *N. J. L.* 616. This was not error, but the plaintiff was also entitled to the direction upon the other ground urged. Iannazzo ceased to work because of the illness from which he died on November 26th, 1927, during the period of coverage by the American Mutual Liability Insurance Company. Chapter 95, *Pamph. L.* 1911, *p.* 134, provides for compensation for personal injuries caused to an employe by accident arising out of and in the course of his employment. Chapters 178 and 262, *Pamph. L.* 1917, make provision for compulsory insurance to provide in certain instances for compensation payments arising out of and under the Workmen's Compensation act. Chapter 124, *Pamph. L.* 1924, *p.* 230, provides for compensation for personal injuries to, or for death of an employe by reason of any of the compensational occupational diseases set forth in the statute. This act was, in minor particulars, amended by chapter 31, *Pamph. L.* 1926, *p.* 62. The legislature in setting up a plan for compensation for occupational diseases intended to provide a complete and workable arrangement for the compensation of those disabled by occupational diseases, and also for suitable provisions for their dependents in the event of death.

It is a well known fact that industrial diseases are gradual in development—the first and early steps are not always perceptible. The rate of progress may vary. Sometimes a patient makes a complete recovery; sometimes it is only an apparent one. Sometimes the disease is quiescent and latent; sometimes the fatal course is swift. Medical science cannot always detect and describe the progress of disease. Employes exposed to occupational diseases frequently work for different employers. It is unthinkable that the legislature should have contemplated that in such instances the recovery of compensation should be defeated. The legislature has properly assumed a benevolent care for workmen. The Compensation act has proved of inestimable benefit not only to employer and employe, but also to the state generally. The legislature must have intended that compensation should be determined,

subject to procedural limitations, when the disability or death occurred, and at no other time. Otherwise, the whole plan would prove ineffective.

In *Johnson* v. *London Guarantee and Accident Co.*, 217 *Mass.* 388, it was said: "We are of opinion that the board were warranted in finding that the injury was received when he became sick and unable to perform labor. Until then he had received no 'personal injury,' although doubtless the previous absorption of lead into his system since July 1st, 1912, finally produced the condition which terminated in the injury." There is an abundance of authoity cited by the court to support such view, and no good reason to the contrary has been even suggested.

The disability from occupational disease, for which compensation is payable, must necessarily occur when the employe is incapacitated for work. Any other view would make every other provision of the act, and particularly those respecting the time within which the employer must have knowledge of the disease, an absolute nullity. Section 22 (d), chapter 124, *Pamph. L.* 1924, *p.* 232. When the first poison is absorbed is not the time when the disability occurs. The legislature definitely provided that compensation is payable when the exposure has occurred in the employment and the disability has commenced within five months after the termination of such exposure. Section 22 (a), *Pamph. L.* 1926, *ch.* 31, *p.* 62. There is no doubt that disability occurs when either the employe dies or is incapacitated from work, and when the compensation bureau finds that the time of such occurrence is within the four corners of the act compensation is payable and the insurance carrier insuring such risk is liable therefor, and there is no more reason to search for the time when the poisoning first occurred than to search for the second, or third, or fourth exposure. It is disability after exposure in the employer's business that creates the obligation to compensation. There was no dispute in the present case as to when the employe was disabled for work after exposure to benzol poisoning in the employer's business. His disability and death from the occupational disease occurred

within the period insured by the defendant's policy and neither the bureau nor the court below were concerned with a determination as to when the first exposure to the poison occurred. The legislature provided for compensation when the disability occurred after exposure in the employer's business. The employer's liability was fixed as of that time and so also the insurance carriers obligation was assumed as of that date. Had the legislature intended otherwise it would have so said.

It is well settled in England that an employe is entitled to recover compensation when he proves that the disablement occurred within the statutory period for exposure to occupational disease in his last employment, irrespective of when and where the disease was first contracted. *Blatchford* v. *Staddon & Founds,* (1927 *Appeal Cases*) 461.

Our statute makes the test for compensation the exposure to certain diseases during the employment and disability thereafter ensuing within five months after termination of the exposure. It places an occupational disease within the category of an accident. Some men can withstand the ravages of poisons—others are less fortunate. When the disability occurs in the time fixed for compensation, and, as in the case of an accident, disability occurs either when death or incapacity occurs, and not when the first quantities of poison, which may prove of no effect, are absorbed.

The judgments are therefore affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 13.

*For reversal*—None.