NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

PASQUALINA RENZI, AS GENERAL ADMINISTRATRIX OF
THE ESTATE OF CLEMENTI RENZI, DECEASED, PETI-
TIONER, v. GENERAL LEATHER COMPANY, RESPOND-
ENT.

PASQUALINA RENZI, INDIVIDUALLY AND AS NEXT
FRIEND AND GUARDIAN OF CONCETTA, MARIA, SYL-
VIA AND VIRGINIA RENZI, PETITIONER, v. GENERAL
LEATHER COMPANY, RESPONDENT.

Decided November 15, 1932.

For the petitioners, *Avidan & Avidan* and *James R. Giuliano*.

For the respondent, *William B. McMichael*.

Two petitions were filed in the above entitled matter pray-
ing compensation under the act commonly known as the
Workmen's Compensation act for an occupational disease
arising out of and in the course of the employment of the
decedent, Clementi Renzi, also referred to as Clarence Renzi,
by the respondent, caused by the exposure of the decedent
to benzol and/or to its homologue, toluol. The decedent,
Clementi Renzi, was disabled on account of this occupational
disease on May 29th, 1931, when he ceased work and con-

tinued to be so disabled until the date of his death, October 13th, 1931.

The petitioner, Pasqualina Renzi, also referred to as Lena Renzi, as general administratrix of the estate of Clementi Renzi, deceased, seeks compensation for disability from the period May 29th, 1931, to October 13th, 1931, together with expenses incurred in the treatment of the decedent during that period and the statutory funeral allowance.

Pasqualina Renzi, as widow and dependent of the decedent, and the four infant dependents of the decedent, Concetta, Virginia, Maria and Sylvia, file their petition for compensation as dependents of the decedent, Clementi Renzi.

The hearings on both of the aforesaid petitions were tried jointly. Voluminous testimony was taken in the aforesaid matters and many witnesses were heard in the course of these painstaking proceedings. On behalf of the petitioner testimony was introduced to establish that the decedent, Clementi Renzi, had been practically continuously employed as a "coater" or "doper" in the respondent's leather factory for thirteen or fourteen years prior to his disability on May 29th, 1931; that decedent's employment required him to apply to hides of leather, and with a brush, a certain mixture which admittedly contained forty per cent. benzol and twenty-one per cent. toluol until February, 1928, and thereafter and until the time of the decedent's disability contained approximately twenty-two per cent. to thirty per cent. of toluol. The benzol and toluol used in the mixture served as a solvent causing the solution of cotton which acts as a water-proofing agent for the leather, and a vegetable oil which gives flexibility to the leather. When this mixture or solution is applied to the leather the benzol and toluol evaporate into the atmosphere and are not absorbed into the leather. Benzol and toluol both being heavier than air, settle to the lower levels of the room. Once a mixture is applied the function of the toluol and benzol has been completed.

There was further testimony in the case to show that the decedent worked in the room which had no other ventilation other than the windows and the doors used as entrances and

exits to the room and certain ventilators in the ceiling of the roof called a "rooster" ventilator, which operated on a vertical axis and only when there was some wind or air pressure present. There were also several skylights in this workroom installed within the past few years of the decedent's employment. There was no really effective ventilation system in this workshop. The former superintendent of the plant, who was superintendent during the latter years of the decedent's employment and had been previously employed in an official capacity almost contemporaneously with the decedent in the same factory, testified that the atmosphere of the room in which the decedent worked was very oppressive and that it was filled with the vapors produced by benzol and toluol, described as having a gaseous odor, pungent, disturbing and irritating to the nostrils, heavy and sweet. There was also testimony that the decedent, Renzi, was frequently seen to have nose bleeds, and that all of the windows in the room were frequently closed on rainy and cold days, for the reason that the room had to be kept in a temperate condition, for the better effect of the application of the mixture to the leather. On one occasion the atmosphere of the workroom was so oppressive that the foreman compelled the workmen to go outside into the open for relief.

There was further testimony by the superintendent of the respondent's plant that the atmospheric conditions under which the decedent worked were substantially the same prior to 1928 when the respondent admittedly had been using benzol, and subsequent to 1928 to the date of the decedent's disability, when the respondent alleges it discontinued the use of benzol, and substituted toluol therefor.

The hides of leather placed upon flat tables over which the decedent worked received anywhere from one to four coats of this mixture containing benzol and toluol and thereafter were hung on racks in the same room where the decedent was working, to be dried, pending either their final removal from the room or for further application of the benzol or toluol mixture. During this drying process the moist hides of leather were giving off vapors of benzol and toluol.

The petitioner further showed by Dr. Edel, the toxicologist for Essex county, and also consulting toxicologist for the New Jersey department of labor, that the chemical, physical and toxicological properties of benzol and toluol are similar; that toluol is the closest homologue to benzol, the formula for benzol being $C_6H_6$, and the formula for toluol being $C_6H_5CH_3$, the $CH_3$ radical being substituted for one part of hydrogen; that both chemicals contain the same basic elements of carbon and hydrogen, belong to the same chemical family of hydro-carbon, and are made from the same sources and by the same process, the distinction being that one has a higher boiling point than the other; that these chemicals are produced at varying temperatures; that there is frequently found in commercial toluol some benzol, and in commercial benzol, toluol; that these two chemicals have interchanging qualities, toluol being carried over into benzol and benzol into toluol; that benzol is also referred to as benzene, and toluol is also referred to as toluene or methyl-benzene; and lastly that toluol is toxic, and that exposure to toluol can produce death.

The petitioner further confirmed the foregoing conclusions and opinions through Drs. Gerard, Etchikson, Lowy and Martland; the latter physician being Essex county medical examiner with a national reputation on occupational diseases, who examined the decedent during his lifetime and performed his autopsy. These doctors further showed that the decedent died as the result of his exposure to benzol and toluol during his employment; that the exposure to benzol prior to 1928 undoubtedly impaired the decedent's resistance; that the decedent's exposure to toluol subsequent to 1928 to the time of his disability was toxic to him, and also a contributing cause of his death, and either caused or accelerated his occupational disease and ultimate death. These doctors further testified that the susceptibility to the effects of exposure to benzol and toluol varies with individuals, and that they could not precisely determine the minimum concentration or duration of such exposure which is necessary to produce the occupation disease or its fatal effects.

The petitioner further showed the quantities of benzol and toluol used by decedent in his work, the expenses incurred during decedent's last illness, the amount expended for burial purposes which was in excess of the amount allowed by statute, and also that the decedent left him surviving the following dependents: Pasqualina Renzi, widow of decedent, and the following four children with their respective birthdays: Concetta, born December 8th, 1919; Virginia, born October 17th, 1921; Maria, born April 14th, 1924; Sylvia, born July 3d, 1926.

The respondent in its answer and by its evidence admitted substantially, or did not contradict all of petitioner's allegations and proof respecting duration of employment, extent of decedent's exposure to benzol and toluol, until February, 1928, the number and character of dependents; the date of disability and death of decedent. Respondent admits notice or knowledge of the decedent's occupational disease by its answer on July 31st, 1931.

The respondent concedes in its testimony that the decedent died as the result of chronic benzol poisoning caused by exposure to benzol during his employment with the respondent, to February, 1928. The respondent takes the position that decedent's exposure to toluol from 1928 for a period of more than three years to the date of his disability, was not toxic to him, was harmless and of no effect upon him. The respondent further contends that mere proof by the petitioner that the decedent was exposed to toluol and to the small amount of benzol which respondent's own witness testified was produced by the impure toluol used in respondent's plant from 1928 to the date of disability, is not sufficient to satisfy the requirements of paragraph 22 of the act commonly known as the Workmen's Compensation act with respect to the following provisions:

That "the disability has commenced within five months after the termination of such exposure;" that "the notice to be effective must be given within a period of five months after the date when said employe shall have ceased to be subject to exposure to such occupational disease;" that "within one

year after the date on which the employe ceased to be exposed in the course of employment with the employer to such occupational disease as hereinabove defined," the petition must be filed.

Nothing is found in the act compelling the construction of these requirements of the act that the petitioner must prove in addition to his exposure to benzene and its homologue, the further fact that such exposure was toxic to him and either caused or accelerated the occupational disease within the periods above mentioned. Paragraph 22a of the act gives rise to a right of compensation "for personal injuries to or for death of such employe by any of the compensable occupationable diseases hereinafter defined, arising out of and in the course of his [employe's] employment. The burden is of course placed upon the petitioner to establish at all times that the disability or death was caused by exposure in the course of the employment. Paragraph 22b, in listing occupational diseases refers to "benzene and its homologues and all derivatives theerof," as an occupational disease. If, for the purposes of this section of the act benzene and occupational disease are used synonymously, then for the limitations above referred to as to the time within which disability shall commence and the petition shall be filed, proof of exposure to benzene and its homologues should be sufficient. The employer is adequately safe-guarded by this construction for the reason that the petitioner must further prove that his death or disability was caused by his exposure to an occupational disease. The time limitations above provided for would appear to be safeguards as to the *bona fides* of the petitioner's claim.

Under the respondent's construction of the above provisions of the act the petitioner in this case would be barred from recovering from this occupational disease for the reason that his disability arose for almost three years after the time when the respondent conceeds that the petitioner contracted his occupational disease.

The construction of these provisions of the act are consistent with the views expressed by the Court of Errors and

Appeals in the case of *Textileather Corp.* v. *Great American Indemnity Co.*, 108 *N. J. L.* 121; 156 *Atl. Rep.* 840, in which the court said:

"It is a well known fact that industrial diseases are gradual in development. The first and early steps are not altogether perceptible. The rate of progress may vary. Sometimes a patient makes a complete recovery; sometimes it is only an apparent one, sometimes the disease is quiescent and latent; sometimes the fatal course is swift. *Medical science cannot always detect and describe the progress of disease* * * *. The legislature has properly assumed a benevolent care for workmen * * *. The legislature must have intended that compensation should be determined subject to procedural limitation when the disability or death occurred and at no other time."

Respondent's defense to the petitioner's claim can only become complete if we accept not only their construction of the foregoing provisions of the act, but in addition thereto, that decedent's exposure to toluol and to the small amount of benzol from the period 1928 to the date of his disability was utterly harmless to him, and was not toxic to him.

Under our view of the effect of this latter exposure upon the decedent it is not necessary to accept the construction of the foregoing provisions of the act as we have above indicated. It is here held, found and determined that the decedent in this case died as the result of his exposure to benzol and toluol which arose out of and in the course of his employment with the respondent, and that decedent's exposure to toluol from 1928 to the date of his disability was toxic to him, and was a contributing cause of his death.

\* \* \* \* \* \* \*

JOHN C. WEGNER,
*Deputy Commissioner.*