QUALITY EXCELSIOR COAL CO. *v.* SMITH.

5-2311                                        342 S. W. 2d 480

Opinion delivered February 6, 1961.

*Hardin, Barton & Hardin,* for appellants.

*Sam Sexton, Jr.,* for appellee.

PAUL WARD, Associate Justice. Jack Smith was an employee of the Quality Excelsior Coal Company for many years until he quit work on February 22, 1957 because he was physically incapacitated. Although he was informed by the doctors in 1950 that he had contracted silicosis Grade 3 he continued to work, and did not file a claim until February 4, 1954.

Hearings on the claim were held before a Referee of the Arkansas Workmen's Compensation Commission in April and May of 1954; in July and October of 1955; and in February of 1958. After his death on March 28, 1958, other hearings were held in the name of his widow. At these hearings the Coal Company, as respondent, took the position that Smith's claim was barred by the statute of limitations—Section 81-1318, of the Arkansas Statutes, 1947.

Finally, on November 30, 1959, the full Commission found in favor of Mrs. Jack Smith, the appellee herein, in the amount of $1,995.00—being $35.00 per week from February 22, 1957 to March 28, 1958. On July 15, 1960, this finding was affirmed by the Circuit Court. The Coal Company and its insurance carrier now prosecute this appeal for a reversal on the sole ground that the claim was barred by the statute of limitations.

Since appellants make no objection to the amount allowed (provided the claim is found to be compensable) and since they obviously concede Smith was incapacitated because of silicosis that arose out of and in the course of his employment, it is necessary to set out only such testimony as bears on the one question heretofore mentioned. In most, if not all, essential parts the evidence is not in dispute.

Smith's regular job was that of a mechanic's helper for which he drew union wages in the amount of $17.28 per day. He first noticed that he had some kind of a chest ailment as early as 1942 but continued his regular work. In 1950 he went to the Booneville Sanatorium for an examination where he was informed that he had sili-

cosis Grade 3 (an advanced stage) and he was told to go home and rest. Notwithstanding this Smith continued his regular work until December 17, 1953, when he was laid off by the Company because of a work shortage. He resumed work the latter part of 1954 as a night watchman at reduced wages—$8.00 per day—until May, 1955 when he again began receiving $17.28 per day as a mechanic's helper. He worked in this capacity, missing only a few days each month, until February 22, 1957 when he was forced to quit work because of his physical condition.

Section 81-1318 above mentioned reads:

"A claim for compensation for disability on account of injury which is either an occupational disease or occupational infection shall be barred unless filed with the Commission within two years from the date of the last injurious exposure to the hazards of the disease or infection, *except that in a claim for compensation for disability on account of silicosis or asbestosis, the claim must be filed with the Commission within one (1) year after the time of disablement therefrom, and such disablement must occur within three (3) years from the date of the last injurious exposure to the hazards of silicosis or asbestosis.*" (Emphasis supplied.)

Appellants base their contention on that portion of the above section which has been emphasized. Paraphrasing the emphasized portion of the statute and applying it to this case, it appears that Smith's claim, if filed in due time, had to meet two prerequisites: (a) It had to be filed within one year after *the time of disablement,* and (b) *the time of disablement* must have occurred within three years from the date of the last injurious exposure. Appellants do not concern themselves here with the date of the last injurious exposure but only with the date or *time of disablement,* and take the position that this date is shown to be October 31, 1950. Therefore, they say, Smith's claim had to be filed no later than October 31, 1951. As already seen, the claim was not filed until February 4, 1954.

The pivotal issue for discussion, therefore, is what constitutes, under the statute, the *time of disablement* in this case. Is it, as contended by appellants, the time when Smith was informed by the doctors that he had silicosis in the most advanced stage, i.e., a time when Smith knew or should have known he was disabled; or is it, as contended by appellee, the time when Smith actually became unable to perform his regular work?

After carefully reviewing the authorities presented by both sides we have concluded that appellee's contention is most tenable under the facts in this case, and that, therefore, the findings of the Commission and the judgment of the Circuit Court must be affirmed. In the case of *Rannals* v. *Smokeless Coal Co., et al.*, 229 Ark. 919, 319 S. W. 2d 218, this court had occasion to construe the statute here involved as it relates to the date of disablement. On a different set of facts the court held that the claim was barred by the statute, but the language used throws some light upon the point hereunder consideration. There the court said:

"It is, therefore, not the disease of silicosis, for however long a period it might have existed, but the *actual disablement* which determines the period of limitation, or the date of the commencement of the running of the Statute." (Emphasis added.)

In the cited cases the claimant *quit work* more than a year before the claim was filed with the Commission. Such, of course, was not true in this case. Also, we find language of like tenor in the case of *Conatser* v. *D. W. Hoskins Truck Service*, 210 Ark. 141, 194 S. W. 2d 680. There the court defined disability as meaning: "incapacity because of the injury to *earn* in the same or any other employment the wages which the employee was receiving at the time of the injury." (Emphasis supplied.) The effect of the holding in that case was that Conatser was *not disabled* because he actually did work and drew the same wages he had previously drawn. This holding strongly suggests the conclusion in this case that Smith was not disabled in 1950 because he actually worked (at

his regular job) and received the same wages as before. Appellants apparently try to escape the force of the above decision by putting emphasis on the word "earned" in the above quotation. They assert (in effect) that Smith did not *earn* the wages he was paid, but that said wages were paid by the Company as a kind of *pension*. We do not think the record sustains this idea of a pension, because appellants admitted that Smith did a good job at all times. At least there is ample evidence in the record to support such a finding by the Commission. We have examined the authorities from other jurisdictions relied on by appellants but find nothing to compel a view contrary to the one we have just expressed.

The Workmen's Compensation Statute itself supports the conclusion heretofore reached. Section 81-1302(e) (under the heading of "Definitions") says: " 'Disability' means incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury." We also find support for our view in the decisions of other jurisdictions. See: *Textileather Corporation* v. *Great American Indemnity Company*, 108 N.J.L. 121, 156 A. 840; *In re Johnson*, 217 Mass. 388, 104 N. E. 735; and *Madison* v. *Wedron Silica Company*, 352 Ill. 60, 184 N. E. 901.

Smith's decision to continue working until February, 1957 would appear to have been beneficial rather than harmful to appellants' financial interest. If he had quit work in 1950, as appellants insist he should have done, or could have done, it seems quite likely that appellants would have had to pay him in excess of $8,000.00 instead of the $1,995.00 awarded by the Commission. There is ample evidence in the record to justify the Commission in finding that Smith's work at all times was satisfactory, and that the Company would have been compelled to hire someone in his place if he had quit work. We do not favor any interpretation of the statutes which would encourage an employee to quit work for the purpose of drawing compensation when he was actually able

to work. We are favorably impressed with the language employed in the case of *Bianco* v. *Industrial Accident Commission* (Cal. App.) 142 P. 2d 73, and in *Hunt* v. *F. R. Patterson Const. Co.,* 253 Mich. 273, 235 N. W. 207. In the former citation the court said:

"It appears from these cases, and the rule seems eminently sound and just, that it is not the fact that the decedent may have been technically entitled to compensation that starts the statute running, even if he knew that he was so entitled, but that to have this result the injury must have culminated in a real and material disability to perform his normal work and must have resulted in a material wage loss."

In the latter case, the court said:

"Many persons afflicted with a slight ailment causing pain and distress do not regard it seriously. They expect that it will soon pass away. Such action on the part of an employee inures to the benefit of his employer. It is apparent that plaintiff felt that he had no ground for complaint against his employer until his condition necessitated his quitting work, . . ."

It is therefore our conclusion that the judgment of the Circuit Court must be, and it is hereby, affirmed.