JULIA V. AYERS, PETITIONER-DEFENDANT IN CER-
TIORARI, v. PUBLIC SERVICE CO-ORDINATED TRANS-
PORT, RESPONDENT-PROSECUTOR IN CERTIORARI.

Submitted May 11, 1934—Decided October 9, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutor in *certiorari, Henry H. Fryling* (*Elmer W. Romine,* of counsel).

For the defendant in *certiorari, Meyer C. Ellenstein* (*James F. X. O'Brien,* of counsel).

PER CURIAM.

Judge Hartshorne, in the Essex County Court of Common Pleas, when this case was there on appeal from the workmen's compensation bureau, delivered the following opinion:

"A careful reading of the four hundred-page record shows that the key to the situation lies in the fact that the original injury, as alleged by petitioner, was trivial in character, the ultimate death of petitioner's decedent resulting from infection in such wound, despite medical care. With this in mind, the solution of both the factual and legal difficulties becomes simplified.

"Respondent-appellant contends that petitioner has not established her case by the greater weight of the credible evidence. But the only direct evidence as to the accidental injury is that given by one Cresse, a totally disinterested eye-

witness, whose testimony is clear and convincing in every detail, and the testimony of one Stiefel, produced by the respondent-appellant, to deny the accident. Not only in theory but in fact, this witness appears to have been hostile to petitioner, yet his testimony, when analyzed, corroborates petitioner.

"Cresse's story is that petitioner's husband, since deceased, a trolley inspector of respondent-appellant, was alighting from a trolley car in the course of his duties on September 22d, 1931, on Bloomfield avenue, in Verona, opposite Stiefel's place of employment, when he missed his footing and fell, slightly cutting or abrasing his left leg just above the ankle. Decedent's written statement was taken by the respondent-appellant, after his leg was amputated and three days before he died, and was put in evidence by the respondent-appellant. This indicates Stiefel saw the occurrence. Stiefel denies this, basing his denial upon the fact that September 22d, 1931, was his day off. Irrespective of the facts that another witness for respondent-appellant testifies that Stiefel's 'day off' record is sometimes in error, and that, both petitioner and her daughter testify that Stiefel later told them he saw the accident, Stiefel himself testified that 'I seen him [decedent] from the trolley car he got off,' that he 'saw him [decedent] when he fell,' and that decedent thereafter asked Stiefel for some iodine, evidently for his leg, and that all this occurred the latter part of September, 1931. He further admits that he 'might have' told decedent to report the accident to the respondent-appellant at once. Finally, Stiefel bases his claim that September 22d, 1931, was his day off, mainly on the fact that it was a Thursday, his regular day off. As a matter of fact, September 22d, 1931, fell on a Tuesday, not Thursday. Nor does respondent-appellant produce its motorman, who operated its cars at the spot in question at or about the time claimed, to deny such occurrence.

"Nor is decedent's written statement to respondent-appellant's investigator, taken as above, to the contrary. This was taken by an investigator from respondent-appellant's welfare

department. He was primarily interested in illnesses, not accidents. Therefore, decedent's illness, gangrene, was what was stressed, not its alleged cause, the fall, abrasion and infection. After discussing the gangrene and its inception at some length, the statement continues:

" 'About two or three weeks before I remained away from work on October 6th, 1931 [*i. e.*, in the neighborhood of September 22d], I had boarded an east-bound car on the Bloomfield-Caldwell line on duty and, at about six o'clock P. M., I attempted to alight from the car at Bloomfield and Mount Prospect avenues, Verona. As no passengers were getting off or on, I believe the operator, whom I do not remember, slowed down the car, and I stepped off the step and fell to my knees and hands on the street pavement, but I got right up and I did not feel anything wrong with me—no pain resulted from the fall in my legs or hands and, to my best knowledge, I had not hurt myself at all  *  *  *. John Stiefel told me that I ought to report it, but I said to him that I wasn't hurt and I didn't believe the fall amounted to anything  *  *  *. I felt no pain or other effects of the pain the balance of the day nor any that day following. I didn't bother to examine myself because I didn't have any pain and I didn't believe I had injured myself. I never did report to the company about it. To my best knowledge the above are the only times that I had any kind of an accident while on duty. I never have had any trouble before with my legs, until Sunday, October 4th, 1931, when I noticed the foot was cold and numb, nor have I ever had any treatment for any condition like rheumatism or arthritis.'

"When we bear in mind the fact that decedent had just gone through the amputation of his left leg above the knee, it is little wonder that the trivial scratch he received at the time of the above fall appeared quite inconsequential—'I didn't believe the fall amounted to anything.' Small wonder, after such an operation, that he recollects no pain from such a scratch. It is a matter of common knowledge that infection may result from the slightest pin prick opening in the

skin. Clearly this pin prick opening may occur without a healthy man feeling any substantial amount of pain, certainly, without his recalling it after undergoing a major operation. Note that decedent does not say that he did not fall or that he was not injured in fact. He expressly says he did fall, though he 'didn't [then] believe I had injured myself.' But in the self-same statement he says that his physician, Dr. Bleier, 'thought the condition [gangrene] was caused by a fall,' and after recounting the above facts and another incident in his statement, decedent adds, 'to my best knowledge the above are the only times that I had any kind of an accident while on duty.' Decedent's statement, the respondent-appellant's strongest reliance, therefore does not deny the accidental injury, and such is clearly established by the requisite burden of proof.

"Petitioner's and the doctor's hearsay testimony as to the fall will, of course, not be considered in this aspect. But the fact that same were inadmissible (*Helminsky* v. *Ford Motor Co.,* 111 *N. J. L.* 369), and the fact that they may have improperly formed a part of the basis of the award by the bureau, will not result in a reversal here, when the burden of proof is otherwise properly sustained, since this court is to 'decide the merits of the controversy.' *Pamph. L.* 1932, *ch.* 25, § 19; *Helminsky* v. *Ford Motor Co., supra.*

"Furthermore, the casual connection of decedent's ultimate death is properly established. There is ample testimony as to decedent's previous good health in all respects. Four doctors testify that the wound became infected; that this infection caused gangrene of the foot; that this gangrene spread and required amputation of the limb, and that decedent died as a result of this amputation. The testimony of Dr. Samuel, not an attending physician, for the respondent-appellant, stands practically alone to the contrary.

"Respondent-appellant objects that it did not have 'knowledge of the occurrence of the injury,' nor was it given written notice. Regardless of the fact that it is 'knowledge of the occurrence of the injury,' as distinguished from knowledge

merely of the accident, that is requisite, it would appear that respondent-appellant had such knowledge, if it was not, in fact, given written notice. 'First hand personal knowledge is not what is meant' by the statute, but 'what would be called knowledge in common parlance, such knowledge as most of us are confined to in the daily affairs of life.' *Allen* v. *City of Millville*, 87 *N. J. L.* 356. Petitioner testifies that respondent-appellant's doctor in charge at the home office was told of the entire situation shortly after it occurred. The person in charge of respondent-appellant's welfare department at the home office called by respondent-appellant, testified that this physician, Dr. Pascall, was uncertain 'whether he should treat the case as a compensation case or as one of illness.' Finally, respondent-appellant sent its investigator to find out the true facts from the lips of decedent in the hospital, after the amputation and three days before he died.

"As noted above, decedent does not there deny, either that he had an accident or that an injury resulted, but merely does not recollect pain as a result of such accidental injury. In such statement, on the contrary, decedent does set forth the fall exactly as petitioner now claims, explicitly calls it an 'accident' and says that, while he, decedent, 'did not believe I had injured myself,' his doctor thought his gangrene 'was caused by a fall.' The above clearly constituted compliance with the statutory requirements and decedent's statement is admissible for this purpose, if for no other.

"As to the question raised by the respondent-appellant concerning the dependence of decedent's nephew, the testimony is that such nephew was actually being supported by decedent as a member of his family. The statutory requirement is that the claimant must be 'dependent in fact.' *Muzik* v. *Erie Railroad*, 85 *N. J. L.* 129. Even if dependency in fact means not only support in fact, but as well a duty to so support, in the face of such testimony, the burden was upon the respondent to show the existence of such nephew's parents, who were both able and responsible for his maintenance. This it did not attempt to do.

"For the above reasons, the determination of the compensation bureau is affirmed, and an order may be entered accordingly."

Now in our judgment the foregoing opinion of Judge Hartshorne in deciding the appeal in the Court of Common Pleas completely disposes of the reasons of the prosecutor in *certiorari* now presented. Those reasons in effect are: (1) There was no proof of knowledge or notice, either oral or written, as required by the statute; (2) the judgment of the workmen's compensation bureau and the Essex County Court of Common Pleas is unsupported by legal evidence; (3) the judgment of the workmen's compensation bureau and the Essex County Court of Common Pleas was based upon an incorrect assumption of law and facts.

Since we find no merit in the reasons or arguments on behalf of the prosecutor in *certiorari*, as is demonstrated by the opinion in the court below, the judgment below will be affirmed, with costs.