LUIGI CIRILLO, PETITIONER-RESPONDENT, v. UNITED ENGINEERS AND CONSTRUCTORS, INC., RESPONDENT-APPELLANT.

Submitted October 28, 1938—Decided January 13, 1939.

For the petitioner-respondent, *George Pellettieri* and *Vincent A. deBenedetto*.

For the respondent-appellant, *Elmer W. Romine* and *Henry H. Fryling*.

The opinion of the court was delivered by

Case, J. The appeal arises out of a petition for an allowance for increased permanent disability under the Workmen's

Compensation act, *Pamph. L.* 1931, *ch.* 279, § 2; *R. S.* 1937, 34:15-27. The bureau granted the application. The Burlington Common Pleas Court reversed. The Supreme Court reversed the Pleas and affirmed the bureau. The single question before us is whether the record discloses competent legal proof of increased disability. Where there is a dispute of fact in the evidence in a workman's compensation case and there is competent evidence to sustain the judgment, this court will not reverse the Supreme Court on appeal; but that the absence of competent evidence is ground for reversal is not only the law but is made clear in the cases which state the first mentioned principle: *e. g., Berman* v. *Levenstein,* 121 *N. J. L.* 139; *Helminsky* v. *Ford Motor Co.,* 111 *Id.* 369 (at *p.* 373); *Lebits* v. *General Cable Corp.,* 112 *Id.* 381; *Kovalchuck* v. *Simpson & Brown,* 117 *Id.* 400; *Berlinger* v. *Medal Silk Co.,* 113 *Id.* 476.

On November 12th, 1931, Luigi Cirillo was injured while in the employ of United Engineers and Constructors, Inc. On June 24th, 1933, he petitioned the bureau for compensation and at the hearing, September 21st, 1933, there was medical testimony on his behalf (controverted by the employer) that his permanent disability was seventy per centum of total. The deputy commissioner, November 8th, 1933, found that there was permanent disability, growing out of an existing arthritis aggravated by the lifting of stones in the course of his work and therefore chargeable to the employer, to the extent of fifteen per centum of total. On February 6th, 1935, Cirillo filed a petition wherein he alleged that his disability had increased so that he was unable to do any work whatever and sought greater compensation. After the hearing thereon, the bureau concluded that the permanent disability was then thirty per centum of total and revised the award upward. In reversing that judgment on appeal Judge Hendrickson in the Pleas observed that the petitioner had produced no definite medical testimony that there had been an increase of disability since the first award, that there was no evidence upon which a finding of increase in disability could be based and that the new petition was in effect an

attempted appeal from the first award, with a reproduction of practically the same testimony.

The petitioner's witnesses consisted of himself, his wife and three doctors. Neither Mr. nor Mrs. Cirillo said that the disability had increased. The testimony of both of them was that the claimant was unable to do any work and that he had been unable to do any work *since he was injured in 1931.* If the present degree of disability extends back to the beginning then, of course, there has been no increase. Not only that, but neither those witnesses nor anyone else testified to comparative conditions which would have supported medical opinion testimony, had there been such, that there was an increase in disability chargeable to the accident. Dr. Collins was petitioner's chief and most experienced medical witness. He qualified both as a general practitioner and a roentgenologist. He testified that there was a loosened and displaced vertebra due, in his opinion, to the accident, but, although he had before him, as exhibits, X-ray photographs taken at intervals before and after the original hearing and extending up to approximately the date of the testimony, he did not say that the condition had arisen since that hearing, nor did he say that the petitioner's state of disability was due in any measure to that condition. He did, however, state specifically and positively that he could not distinguish between the results flowing out of the affected vertebra and those caused by the existing arthritis, because, as he said, each, alone, would produce the same symptoms. None of the physicians testified, either from observation or upon hypothesis, that there had been increase of disability since the first award. Dr. Dowd, who had examined the petitioner before the first hearing, testified positively for the respondent that he had found none.

What did come into the hearing was the evidence of the petitioner's physicians that in their opinion the petitioner was in a state of permanent disability ranging from seventy per centum to one hundred per centum of total, the estimate varying with the witness. But that, as was observed in the Common Pleas Court, was substantially the proof in the first

instance. It is, we think, apparent how uncertain and inadequate is an opinion regarding present percentage of disability as the sole standard for determining whether, and if so to what extent, present disability chargeable to the accident is greater than that which existed at the hearing some years ago. It is of common knowledge, certainly among those who have to do with the trial or determination of such questions judicially, illustrations of the fact being present in the evidence at each of the hearings herein, that there is frequently a wide spread in medical testimony as to the percentage of permanent disability from which a person suffers as well as to the cause or causes to which that disability may in whole or in part be attributed. The earlier finding by the bureau constituted the deputy commissioner's judgment, based upon a comprehensive assimilation of all of the testimony which ranged from an opinion that the disability was negligible up to an estimate of seventy per centum of total. We think that opinion evidence of present disability based only upon existing physical or mental condition, standing alone, is not competent to sustain a finding on the relative fact of an *increase* or a *decrease* in disability. To make such testimony competent for that purpose the witness should at least be informed from his own knowledge, made manifest, or from proofs *aliunde* incorporated into a question, what the workman's condition was at the time when the court rated it at a fixed partial permanent disability. The use of the word "increase" or of the word "decrease" connotes two states of physical condition, one which was and one which is, and there must be knowledge of each state in order to support a conclusion that the present condition marks an increase or a decrease. When once the degree of disability from which a workman suffers at a named time has been judicially determined, then in fairness both to the employer and to the employe the question of increase or decrease in disability must be predicated upon the condition as it was at the hearing out of which the determination emanated. The earlier application is *res adjudicata* as to the issues then determined. *Tucker* v. *Frank J. Beltramo, Inc.,* 117 *N. J. L.* 72; *affirmed,* 118

*Id.* 301; *United Engineers and Constructors, Inc.,* v. *Anderson,* 14 *N. J. Mis. R.* 799. While a judgment determining the percentage of permanent impairment is not an adjudication against a subsequent increase of that disability, it is *res adjudicata* upon the fact of the extent of the disability at the time of the finding. *DeSantis* v. *Turner Construction Co.,* 120 *N. J. L.* 590. A claim of increase or decrease of disability is grounded in the *comparative* condition and ability of the workman and, to prevail, must be supported by proofs which permit comparison. We find no such proofs connected up with the injury.

The judgment of the Supreme Court is therefore reversed. This will result in an affirmance of the judgment in the Burlington Common Pleas.

*For affirmance*—RAFFERTY, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, DONGES, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, WALKER, JJ. 12.