MARIE A. BRIGHTON, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ALFRED RICHARD BRIGHTON, PETITIONER-RESPONDENT, v. BOROUGH OF RUMSON, A MUNICIPAL CORPORATION, RESPONDENT-PROSECUTOR.

Submitted October 1, 1946—Decided January 2, 1947.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the prosecutor, *Reginald V. Spell* (*Harry E. Walburg,* of counsel).

For the respondent, *James Laird* (*Haydn Proctor,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. *R. S.* 34:15–7, *et seq.* The dispositive question for decision is whether respondent carried the burden of establishing, by a preponderance of the probabilities according to the experience of mankind, that the death of her husband, allegedly due to a "heart attack" brought on by the "strain" of his work, was the result of an "accident" which arose out of his employment. Compare for analogy, *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533; 6 *Atl. Rep.* (*2d*) 213; *Giles* v. *W. E. Beverage Co.,* 133 *N. J. L.* 137; 43 *Atl. Rep.* (*2d*) 286; *affirmed,* 134 *N. J. L.* 234; 46 *Atl. Rep.* (*2d*) 728.

In the Bureau and in the Monmouth County Court of Common Pleas it was held that the death of the employee was the result of an accident which arose out of and in the course of his employment. Notwithstanding the principle of law

that we do not lightly disturb the harmonious result reached in the Bureau and in the Pleas if same finds ample support in the testimony (*Pearson* v. *Armstrong Cork Co.*, 6 *N. J. Mis. R.* 976, 978; 143 *Atl. Rep.* 449; *Mountain Ice Co.* v. *Durkin,* 6 *N. J. Mis. R.* 1111, 1113; 144 *Atl. Rep.* 6; *affirmed,* 105 *N. J. L.* 636; 147 *Atl. Rep.* 451; *Berlinger* v. *Medal Silk Co.,* 113 *N. J. L.* 476; 174 *Atl. Rep.* 558; *Reis* v. *Breeze Corp.,* 129 *N. J. L.* 138, 141, *et seq.*; 28 *Atl. Rep.* (*2d*) 304), nevertheless that principle is no bar to the right of this court to reach a result contrary to that reached in the Bureau, or in the Pleas, or both. It is the duty of this court to make an independent determination of the facts and law. *R. S.* 2:81–8; *Lazzio* v. *Primo Silk Co.,* 114 *N. J. L.* 450; 177 *Atl. Rep.* 251; *affirmed,* 115 *N. J. L.* 506; 180 *Atl. Rep.* 881; *Anderson* v. *Federal Shipbuilding and Dry Dock Co.,* 118 *N. J. L.* 55, 56; 191 *Atl. Rep.* 455; *Rubeo* v. *Arthur McMullen Co.,* 117 *N. J. L.* 574, 577; 189 *Atl. Rep.* 662; *Stetser* v. *American Stores Co.,* 124 *N. J. L.* 228, 229; 11 *Atl. Rep.* (*2d*) 51; *Beerman* v. *Public Service Co-ordinated Transport,* 123 *N. J. L.* 479, 481; 9 *Atl. Rep.* (*2d*) 690; *Calicchio* v. *Jersey City Stock Yards Co.,* 125 *N. J. L.* 112; 14 *Atl. Rep.* (*2d*) 465. The discharge of our duty leads us to the result that the respondent failed properly to establish that her husband died as the result of an accident which arose out of his employment.

The undisputed facts are that Alfred Richard Brighton was the former husband of the respondent, petitioner below, who has since married one Hromyak on June 3d, 1944. Leave was granted to amend her petition accordingly but no such amendment is made to appear.

Alfred Richard Brighton (hereafter referred to as Brighton) prior to his death on January 22d, 1942, had been employed for about eighteen or nineteen years by prosecutor, Borough of Rumson, a municipal corporation, as its "road supervisor." He was re-employed each year. There is nothing to indicate that prosecutor ever officially defined Brighton's duties. His job, according to the mechanic employed by prosecutor, was "to line up work for the men (about eight in number) and run the place." The place

refers to prosecutor's garage where there were housed, maintained and repaired the seven trucks owned by prosecutor. The place was used both as a garage and as a work shop. The actual maintenance of the trucks and the repair work thereon were the duties of a mechanic employed by prosecutor for that specific purpose.

Brighton, as supervisor, made "inspection of the roads every day." There are about "sixty-five miles of streets." He made those inspections in trucks belonging to prosecutor and in his own private automobile which automobile he also used to go to his work and return to his home. He supplied the "gas" for the use of his automobile. He reached according to prosecutor's official clerk, the point when he, Brighton, no longer "wished" to use his own car all the time. His wish, on the recommendation of prosecutor's chairman of the road committee, was satisfied. Thus on December 26th, 1941, prosecutor purchased and made available to Brighton a small "Ford pick up truck" for his use in going about his work as supervisor of the roads.

And so it was when on the morning of his death Brighton reported for work. He attended to his official duties. He returned to the garage about noon time. Then he left to go home for dinner and returned to the shop about 1:00 P. M. From that time until about 1:45 P. M., Brighton was according to the mechanic present at the time, engaged in "rubbing and shining" and "polishing," "pretty hard," the hood of his private car while same was in prosecutor's garage at the time. Brighton's objective was to remove spots from the hood which he said were "on there off the maple trees," although the mechanic testified that the car looked "bright and clear" to him. During all this time Brighton complained but once, about 1:30 P. M. His complaint was that he felt warm although the inside of the garage was "cold and damp." The mechanic left the garage about 1:45 P. M. Thereafter another employee of prosecutor walked into the garage. He, too, found Brighton "rubbing and polishing" the hood of the car. Brighton asked this employee to get him a drink of water. As the employee turned to get the water Brighton started to fall. The employee "grabbed hold of him and set

him down on the bench." The employee "rushed out of the garage to the corner and asked a man to call the doctor." Dr. Feldman, who had died prior to the hearing in the Bureau, responded. Brighton was then dead.

The applicable law is clear. Respondent was obliged properly to establish that the alleged accident (1) arose out of and (2) in the course of the employment. That is the statutory requirement. Assuming, but not deciding, that the alleged accident arose "in the course of" the employment, the proofs, in our opinion, fail to establish that it arose "out of" the employment. For an accident to arise out of the employment, it must be the result of a risk which might have been contemplated by a reasonable person as incidental to his employment. And the risk is incidental to the employment when it belongs to or is connected with that which the employee is obliged to do or is called upon to do in order to fulfill his contract of hire. *Bryant, Admx.,* v. *Fissell,* 84 *N. J. L.* 72, 76; 86 *Atl. Rep.* 458; *Fitzgerals* v. *Clarke & Son* (1908), 2 *K. B.* 796; *Cf. Bird* v. *Lake Hopatcong Country Club,* 119 *N. J. L.* 415, 416; 197 *Atl. Rep.* 282, cited with approval in *Blanar* v. *Goldstein* (*Court of Errors and Appeals*), 124 *N. J. L.* 523, 525; 12 *Atl. Rep.* (2d) 673; *Giles* v. *W. E. Beverage Co., supra,* and cases collated at *pp.* 139, 140.

We search the proofs in vain to satisfy the stated applicable principles. There is not a scintilla of evidence to indicate that Brighton was obliged to or called upon to furnish his private car or supply it with gasoline, or keep it highly polished and shined in order to fulfill his contract of hire as supervisor of roads. Notwithstanding this lack of proof, it was held below that since Brighton's use of his private car in his official work was known to prosecutor's officials and since they voiced no objection to such use, thus the use Brighton made of his private car ripened into a custom which inured to the mutual benefit and convenience of Brighton and the prosecutor; that since a public official cannot be expected to drive a dirty car and that since the driving and polishing of the car was also done with the knowledge of prosecutor without objection on its part, *ergo,* Brighton's

death, allegedly due to the strain incident to his rubbing, shining and polishing of his car, was the result of an accident which arose out of and in the course of his employment. Compare for analogy, *Micieli* v. *Erie Railroad Co.,* 130 *N. J. L.* 448, and cases collated at *p.* 452; 33 *Atl. Rep.* (*2d*) 586; *affirmed,* 131 *N. J. L.* 427; 37 *Atl. Rep.* (*2d*) 123.

Assuming but not conceding the accuracy of the circumstances upon which the lower tribunals reached the same result, the fact is that those circumstances spent their force and legal efficacy on December 26th, 1941. For on that day, as already observed, prosecutor supplied Brighton, pursuant to his request, with a "Ford pick up car" to be used by him "in just doing his supervisory work and riding around the town," and after the borough bought the truck, "there was nothing that would require him [Brighton] to use his own car." The "pick up car was purchased for that purpose."

The use, if any, by Brighton of his private car after December 26th, 1941, including the rubbing, shining and polishing of his car were acts of his own choosing. They were not acts incidental to his employment. They were acts which he was neither obliged to nor called upon to do under his contract of hire. Nor is there proof that such acts, between December 26th, 1941, and January 22d, 1942, had been performed with the official knowledge or acquiescence of the Borough of any official of the borough in authority. Nor is there proof that such acts did or could have, within the stated time, ripened into a custom, or that such acts were beneficial to prosecutor.

We find, factually and legally, that respondent failed to carry the burden properly to establish that the alleged accident arose "out of" the employment. This disposition makes unnecessary the determination of whether Brighton died of a heart condition as the result of an accident within the meaning of our Workmen's Compensation Act.

The judgments below are reversed, without costs.