[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 109 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 110 
This matter is before the court pursuant to a writ of certiorari issued by the former Supreme Court to review a judgment of the Court of Common Pleas reversing the Workmen's Compensation Bureau and awarding compensation to plaintiff, the widow of Edwin Marston.
On March 1, 1945, decedent Edwin Marston was in the employ of appellant, Curtiss Wright Corporation, as a janitor. At about 10:40 p.m. his foreman, Mr. Morris, observed him in the performance of his duties at his employer's plant using a pail and water and washing partitions with a cloth. Approximately 25 minutes thereafter he found him lying on the third floor corridor, his head in a pool of blood and still bleeding, the pail filled partly with water, a small puddle of water near the pail, and drops of water near his feet. Immediately nearby was an open door to the janitors' closet which contained a sink and supplies available for their use. He described the corridor floor as "tile linoleum" and stated that it had been waxed. He called the plant's first aid unit and then left and later in the month signed a statement with respect to the occurrence, which was produced by the corporation during the hearing before the Workmen's Compensation Bureau. *Page 111 
Shortly thereafter, the Chief of Police of Caldwell, who had received a telephone call from the plant, arrived and observed substantially the same conditions described above. He stated that the floor appeared "highly polished" and "as if it had been mopped." The general foreman of the corporation testified that the floors in the building "are, as a general rule, mopped and then buffed with a buffing machine. The floor had been waxed approximately six months before." The Chief of Police further testified that when he arrived the only other person about was a plant guard and that he called the County Medical Examiner's Office which arranged for the removal of the decedent's body. Dr. Beling, Assistant Medical Examiner of Essex County, testified that he performed an autopsy and found that the decedent had died from a fractured skull. The death certificate signed by Dr. Beling described the immediate cause of death as "Accidental fall while at work — Fracture of skull — Subdural hemorrhage."
The Court of Common Pleas, in reversing the Bureau and awarding compensation to plaintiff, found that the decedent, while engaged in the performance of the duties of his employment, fell and sustained a fracture of the skull with subdural hemorrhage and that his death was the result of an accident arising out of and in the course of his employment. The appellant, in seeking to reverse the action of the Pleas, urges, first, that it had no notice or knowledge of the injury within the requirement ofR.S. 34:15-17. We are satisfied that this point is without merit. The act provides for notice to the employer "unless the employer shall have actual knowledge of the occurrence of the injury." As stated in General Cable Corp. v. Levins,124 N.J. Law 223, 227 (E. A. 1940) this means "in fairness to the employer, that there be brought home to him the occurrence of an injury suffered by an employe." That here the occurrence of the injury was amply brought home to the employer corporation is evident from the attendant circumstances including the foreman's observance of all of the known facts pertaining to the occurrence of the injury and his signed statement with respect thereto, his notification to the plant's first aid department, the calling of the Chief of Police, and the *Page 112 
removal of the employee's body from the plant by the County Medical Examiner's Office. See Ayers v. Public ServiceCoordinated Transport, 12 N.J. Misc. 777, R. 781 (Sup.Ct.
1934).
The second and main point urged by the appellant is that underKramerman v. Simon, 131 N.J. Law 250 (Sup.Ct. 1944),Armstrong v. Union County Trust Company, 14 N.J. Misc. R. 648(Sup.Ct. 1936) affirmed 117 N.J. Law 423 (E. A.
1937), and Nardone v. Public Service Electric and Gas Co.,113 N.J. Law 540 (Sup.Ct. 1934), the evidence is insufficient to establish that the decedent's death resulted from an accident arising out of and in the course of his employment. On the other hand, the petitioner urges that the facts presented sufficiently support her claim of death by such accident withinBrooks v. Essex Warehouse Co., 137 N.J. Law 206 (E. A.
1948), Mountain Ice Co. v. Durkin, 6 N.J. Misc. R. 1111(Sup.Ct. 1928) affirmed 105 N.J. Law 636 (E. A.
1929), and DeFazio v. Goldschmidt Detinning Co.,87 N.J. Law 317 (E. A. 1915).
No significant purpose would be served by attempting to reconcile the different lines of cases cited; it is sufficient to recognize the presence of shifting emphasis resulting in differing conclusions resting on slight factual distinctions of doubtful significance. We need deal here only with the particular facts presented and determine therefrom whether, in the light of the liberal construction to which the Workmen's Compensation Act is entitled, the petitioner has, within its contemplation, satisfactorily carried the burden of establishing that the decedent's death resulted from a compensable accident. It is conceded that while the decedent was engaged in the performance of his duties as a janitor at his employer's plant, he died from a fractured skull and alternative possibilities have been suggested, namely, (1) that he was assaulted, (2) that a cardiac or similar seizure resulted in his fall which brought about the fracture, and (3) that he slipped on the highly polished floor while engaged in his work and fell with the resulting fracture.
With respect to the suggestion of assault, we need do nothing more than repeat the statement by the Court of Errors *Page 113 
and Appeals in the Brooks case, supra, in dealing with an analogous situation that, "there is no justification for assuming the commission of a crime of which there is not the slightest evidence."
With respect to the second alternative, Dr. Beling's testimony as to the result of the autopsy affirmatively establishes that the death resulted from a fractured skull and tends to negative the possibility that a cardiac seizure or other internal disorder brought about a fall resulting in the fracture. Cf. Atchison v.Colgate Co., 3 N.J. Misc. R. 451, 452 (Sup.Ct. 1925) affirmed 102 N.J. Law 425 (E. A. 1926). In this connection it might be noted that after Dr. Beling testified that the decedent died as a result of a fractured skull, counsel for the petitioner asked whether there was any evidence that the decedent suffered from any other illness or disease but this question was not answered because of objection by counsel for the appellant. The appellant's present standing to deny the otherwise justifiable inference from Dr. Beling's entire testimony that the death resulted from a fractured skull and no other contributing cause may, therefore, well be doubted.
From all of the evidence presented, including proper inferences, it appears that the third alternative, accepted by the Court of Common Pleas, that the decedent slipped on the highly polished floor while engaged in his work and that his fall resulted in a fractured skull which caused his death, was "a probable or more probable hypothesis with reference to the possibility of other hypotheses." There was no burden upon the petitioner to establish more. See Sunkimat v. Senger Coal IceCorp., 137 N.J. Law 103, 105 (Sup.Ct. 1948). Cf. Richmondv. Scheidell, 8 N.J. Misc. R. 468 (Sup.Ct. 1930).
We find that the decedent's death resulted from an accident arising out of and in the course of his employment; that the appellant had actual knowledge of the injury resulting in the decedent's death; and that the judgment of the Essex County Court of Common Pleas should be affirmed. *Page 114