12 N.J. Super. 276 (1951)
79 A.2d 483
GARNETT B. LIPSCOMBE, PETITIONER-RESPONDENT AND CROSS-APPELLANT,
v.
LOIZEAUX LUMBER COMPANY, RESPONDENT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1951.
Decided March 20, 1951.
*277 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
*278 Mr. Thomas J. Brett argued the cause for the appellant and cross-respondent (Messrs. O'Brien, Brett & O'Brien, attorneys).
Mr. Mario Turtur argued the cause for the respondent and cross-appellant.
The opinion of the court was delivered by JAYNE, J.A.D.
In consequence of the present appeal and cross-appeal we undertake a studious consideration of the judgment of the Union County Court entered on October 6, 1950, by which the petitioner, Garnett B. Lipscombe, was granted an award of workmen's compensation.
On June 25, 1948, the Workmen's Compensation Bureau of the Department of Labor received the claim petition in which the petitioner alleged that on November 5, 1947, he sustained an accident arising out of and in the course of his employment in the mill of J.D. Loizeaux Lumber Company at Plainfield in which he incurred a bodily injury necessitating the amputation of his right leg. On January 15, 1949, he presented an amended claim petition asserting that the injuries suffered in the accident had also required the amputation of his left leg. Chronologically the former amputation occurred on May 28, 1948; the latter on December 28, 1948.
The transcript of the proceedings before the deputy director occupies 489 pages. On March 14, 1950, the deputy director resolved that the petition should be dismissed and judgment was accordingly entered in favor of the respondent. We observe that at the outset of the hearing counsel for the respondent admitted the alleged employment and the occurrence of the accident on or about November 5, 1947, in the course of the employment.
On appeal the Union County Court manifestly after an exhaustive examination of the evidence determined that compensation should be allowed for the loss of the left leg and that the cause should be remanded to the Bureau to fix the compensation, fees, and allowances. Judgment was in due course entered in the County Court in accordance with the decision. Both parties criticize the judgment, the respondent *279 declaring that the dismissal of the petition by the Bureau should have been affirmed, and the petitioner by his cross-appeal contending that the loss of both legs resulted from the injuries sustained by the petitioner in the accident.
Obviously the field of controversy embraces primarily the nature and character of the accident, the quality of the injuries actually sustained by the petitioner, and the causative relationship, if any, between the injury or injuries and the loss of one or both of the petitioner's lower limbs.
Elaborate recitations of the divergent, conflicting, and contradictory evidence appear in the deputy director's determination of facts and in the opinion of the county judge. A recomposition here will not be serviceable to the litigants or their counsel.
Our independent consideration of all of the evidence discloses reasonable justification for many of the findings in which the deputy director and the county judge concurred, such as the inadequacy of preponderant evidence that the great toe of the right foot suffered any injury in the accident, the counterpoise of the evidence relating to the alleged fracture, the absence of complaint and of any objective indication of trauma in that area at the time of the accident and during the period of treatment by Dr. Doggett.
In the existing state of the evidence the two conclusions that the petitioner failed to carry the burden of proving that the accident was a precipitating cause of the loss of the right leg do not appear to be mistaken.
The complicating factual element of the present case is the logically permissive deduction that the blood circulation to the petitioner's feet was found immediately following the accident to be noticeably impeded by arteriosclerosis. Symptoms of such condition had been discovered as early as March, 1941, thus supplying some reason to believe that there was a circulatory disease preexisting the accident. Vide, however, Marshall v. C.F. Mueller Co., 135 N.J.L. 75 (Sup. Ct. 1946).
The evidence, however, is persuasive that the little toe of the left foot suffered injury in the accident. Dr. Doggett *280 discovered some swelling and marked tenderness of the toe. There was no such clinical evidence on the right foot. In this case, as in too many others, we recognize the perplexity occasioned by the discordance of the opinions of the medical experts relative to whether the traumatic injury sustained in the accident aroused and accelerated the arteriosclerotic tendency to gangrene. Cf. Cahill v. Franklin Trust Co., 15 N.J. Misc. R. 409 (Sup. Ct. 1937); Ayers v. Public Service, &c., Transport, 12 N.J. Misc. 777 (Sup. Ct. 1934); Schust v. Wright Aeronautical Corp., 7 N.J. Super. 54 (App. Div. 1950).
In determining the preponderance of probabilities  Hercules Powder Co. v. Nieratko, 113 N.J.L. 195 (Sup. Ct. 1934); affirmed, 114 N.J.L. 254 (E. & A. 1935)  the satisfactory proof of the accidental injury to the left toe was undoubtedly a distinguishing and influential element of the decision under review. To expand the probabilities under the evidence to warrant the conviction that the injury to the little toe of the left foot hastened the progression of the arteriosclerotic condition of the right foot would be to encroach upon surmise and conjecture.
Recognizing the span of time that elapsed between the accident and the development of the gangrenous state of the left foot, it seems manifest in our view of the proof that a full measure of compensatory relief under the statute was afforded the petitioner.
We do not undertake to consider and decide the case de novo. Galloway v. Ford Motor Co., 7 N.J. Super. 18 (App. Div. 1950); affirmed, 5 N.J. 396 (1950).
"It is clear, moreover, the factual findings to which determinative weight is in the first instance to be accorded by this court are the findings of the County Court. We on our part approach the review of the County Court's judgment on that premise. Of course, we are empowered under Rule 3:81-13 to review the facts and make independent findings thereon (Cf. Rules 1:2-20 and 4:2-6) and, while this power is permissive and a litigant may not as a matter of right require our exercise of it, we do not hesitate to employ it where *281 the ends of essential justice will be served by our doing so. In determining whether to accept the findings of the County Court or to make new findings, however, we give the determinative weight to the County Court's findings we have been discussing and will not reverse unless satisfied from our reading of the record the interests of justice require reversal." Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258, 262 (App. Div. 1950); Gagliano v. Botany Worsted Mills, 13 N.J. Super. 1 (App. Div. 1951).
The judgment is affirmed.