18 N.J. Super. 372 (1952)
87 A.2d 365
GEORGE JENSEN, PETITIONER-RESPONDENT,
v.
WILHELMS CONSTRUCTION CO., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1952.
Decided March 18, 1952.
*373 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Mario Turtur argued the cause for the petitioner-respondent.
Mr. Isidor Kalisch argued the cause for the respondent-appellant (Messrs. Kalisch & Kalisch, attorneys).
*374 The opinion of the court was delivered by EASTWOOD, J.A.D.
The respondent, Wilhelms Construction Company, appeals from a judgment of the Union County Court, in a workmen's compensation case, wherein temporary and permanent disability compensation was awarded to the petitioner-respondent, George Jensen. The Workmen's Compensation Division of the Department of Labor and Industry also found in favor of the petitioner.
The only ground of appeal advanced by the construction company is that Jensen's petition was not filed within the time prescribed by the Workmen's Compensation Act. R.S. 34:15-41, 51.
The matter is essentially a factual one. Petitioner claims that on May 13, 1946, while in the employ of the construction company, he sustained an injury to his lower back and leg when he attempted, with the use of a pick, to dislodge a form from concrete. The same evening, he consulted a chiropractor and thereafter received numerous treatments from him. Becoming dissatisfied with the results of these treatments, he consulted several doctors until sometime in September, 1947, when he states he voiced his dissatisfaction to Mr. Frederick Wilhelms, Sr., then president of the construction company, who, Jensen asserts, authorized him to seek treatment of his own choosing, the expense for which was to be borne by the respondent. Subsequently, Jensen consulted Dr. Gay in Baltimore, Maryland, and, on October 30, 1947, was operated on for a dislocated disc. Mr. Frederick Wilhelms, Sr., was not available as a witness at the hearing because of his death in April, 1948. On October 29, 1949, Jensen filed his claim for compensation and in answer to the respondent's contention that the claim was barred by the time limitation of R.S. 34:15-51, supra, Jensen argued that the petition was, in fact, filed within the statutory period of two years from the date on which medical care was furnished by the employer pursuant to an agreement so to do. Inasmuch as the basis for Jensen's claim for compliance with the statutory requirements depends *375 upon the factual existence of the alleged authorization made by Wilhelms, Sr., on behalf of the construction company, we feel constrained to carefully examine the evidence and make a new finding of facts.
The furnishing of medical services to employee by employer constitutes "payment of compensation" within provision of Workmen's Compensation Act barring claims for compensation not filed within two years after last "payment of compensation" by employer, so that claim of employee filed within two years after receiving his last treatment is not barred. Donoher v. American Steel & Wire Co., 2 N.J. Super. 72, 73 (App. Div. 1949). "On appeal to this court from the judgment of the County Court, we accord determinative weight, in the first instance, to the factual findings of the County Court. Donofrio v. Haag Brothers, Inc., above. Particular weight is given in this court to the findings of fact of the County Court, when such findings agree with the findings of fact in the Division of Workmen's Compensation. Cf. Wright v. Westinghouse Elec. & Mfg. Co., 134 N.J.L. 581, 583 (Sup. Ct. 1946), affirmed 135 N.J.L. 460 (E. & A. 1947); Brighton v. Rumson, 135 N.J.L. 81 (Sup. Ct. 1947). It is only when we are satisfied that the interests of justice require it, that we make independent findings of fact. Rule 3:81-13; cf. Rules 1:2-20 and 4:2-6." Gagliano v. Botany Worsted Mills, 13 N.J. Super. 1 (App. Div. 1951), at p. 5. Cf. Temple v. Storch Trucking Co., 3 N.J. 42 (1949); McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276, 282 (App. Div. 1950); Lipscombe v. Loizeaux Lumber Co., 12 N.J. Super. 276, 280 (App. Div. 1951). "While this court will not exercise its discretionary power under Rule 3:81-13 (Cf. Rules 1:2-20 and 4:2-6) to overthrow a factual finding separately arrived at in a workmen's compensation case by two independent tribunals and based upon sufficient evidence (Giresi v. E.I. duPont deNemours & Co., Inc., 7 N.J. Super. 41 (App. Div. 1950); Coronato v. Public Service Coordinated Transport, 4 N.J. Super. 1 (App. Div. 1949)), we will reverse when we are satisfied the finding is *376 not supported by sufficient evidence. See Cirillo v. United Engineers & Constructors, Inc., 121 N.J.L. 511 (E. & A. 1938)." Giacchi v. Richmond Brothers Co., 11 N.J. Super. 76 (App. Div. 1951), at p. 78. See also Ferraro v. Zurcher, 12 N.J. Super. 231, 236 (App. Div. 1951).
The petitioner informed his father, who was outside superintendent of the respondent company, of the accident and was advised by him to stay home for a few days to see what would happen. That same evening, petitioner consulted Dr. Mandel, a chiropractor, who treated him then and on numerous occasions thereafter; that he was dissatisfied with his recuperation; that Wilhelms sent him to see Dr. Chapman, the insurance doctor, and that from there he went to the New Jersey Casualty Manufacturers Insurance Hospital for examination and X-ray treatments. It is admitted that petitioner received six-sevenths of a week temporary disability compensation and that Dr. Chapman's bill and the hospital bills were paid.
Thereafter, petitioner consulted several different doctors on his own in an effort to alleviate his back and left leg condition, which allegedly grew worse. At this point, about September, 1947, the following conversation allegedly took place between Mr. Wilhelms, Sr., and the petitioner, wherein petitioner asked: "What can I do now? Nobody seems to be able to do anything for me." To which Wilhelms allegedly replied: "Well, you don't have to go to an insurance doctor. If they don't want to do anything for you, go to any doctor you want to." Jensen asserts that he then went to Dr. Gay at Johns Hopkins Hospital in Baltimore, Maryland, where, following his operation, he remained until November 7, 1947, when he was discharged and returned to his home in Elizabeth, New Jersey. Following the operation, Jensen was advised to wear a corset for his lower back while at work.
The petitioner never discussed with his father the matter of the alleged authorization for medical treatment. Despite the fact that medical bills approximating $1,000 were paid by Jensen to the hospital, neither he nor his father ever *377 approached Wilhelms or the construction company for reimbursement pursuant to the authorization and, between the date of his return, and the death of Mr. Wilhelm, Sr., the matter was never discussed. Jensen explains his inaction in this matter as attributable to ignorance and "not wanting to bother Mr. Wilhelms." Jensen's father, who had called the hospital to make the necessary arrangements for his son, failed to mention the matter to Mr. Wilhelms, and though he gave his son money to pay for his medical expenses, he stated that he had no knowledge of the existence of any agreement between his son and Wilhelms. In response to a question as to his capacity in arranging for the hospital care for his son, he stated: "Well, it was my duty to see that the boy was taken care of. I'm the father of the kid and I had to take care of him." It was suggested that he was acting in a dual capacity in making the hospital arrangements, i.e., as the boy's father and as superintendent of the company. In answer thereto, he replied: "Well, I wouldn't say yes or no to that, because as far as being the superintendent, when he was on the outside, to go and see a doctor, I never knew that I had the power to do that. I know that today, but I didn't know it at that time." Although the petitioner asserts that he mentioned at Johns Hopkins Hospital the 1946 incident as the cause of his condition, it is significant that in the three histories appearing on the hospital records there is no mention of that incident.
Petitioner's father had been employed by the construction company for approximately 20 years and the petitioner (34 years of age), for more than 10 years. The latter was also a member of the labor union.
Petitioner not only failed to contact Mr. Wilhelms, Sr., concerning the alleged agreement between them, following his return from the hospital in November, 1947, and prior to Wilhelms' death in April, 1948, but also failed to mention the matter to Mr. Wilhelms, Jr., the succeeding president of the respondent company, until the petition was filed approximately 18 months following Wilhelms, Sr. death.
*378 Wilhelms, Jr., testified that to his knowledge the petitioner's trip to Baltimore was on his own; that there had been no application made by the petitioner nor any agreement or authorization given by the firm with respect thereto, and that he did not have knowledge of any such agreement between petitioner and his father.
In deciding the question of the accuracy of the alleged authorization, we reach the inevitable conclusion that the conduct of the petitioner as appearing from the foregoing recital of the evidence, is absolutely contradictory thereof and deserves to be stamped as incredible. The following language of Chief Justice Vanderbilt, in the case of In re Perrone, 5 N.J. 514 (1950), at pp. 521, 522, aptly fits the situation under review:
"* * * The appellants contend that the testimony of Mr. Perrone is uncontradicted and, even though the court believes it to be improbable or incredible, the court must nevertheless accept it as true, citing Wilken v. Shein's Express, 131 N.J.L. 450 (Sup. Ct. 1944), and Baldauf v. Russell, 88 N.J.L. 303 (E. & A. 1915). The court, however, is not so restricted in its capacity as trier of the facts, but is free to weigh the evidence and to reject the testimony of a witness, even though not directly contradicted, when it is contrary to circumstances given in evidence or contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to its truth. Testimony to be believed must not only proceed from the mouth of a credible witness but must be credible in itself. It must be such as the common experience and observation of mankind can approve as probable in the circumstances."

* * * * * * * *
"* * * Moreover, it is a well established and obviously salutary rule in this State that the testimony of a witness need not be believed when the only person who could have contradicted the witness is dead."
See also Clark v. Public Service Electric Co., 86 N.J.L. 144, 150 (E. & A. 1914); Fitzpatrick v. Merchants & Manufacturers, &c., Co., 122 N.J.L. 468 (E. & A. 1939); Bouvier v. County Gas Co., 134 N.J.L. 89 (Sup. Ct. 1946).
Nor do we find any merit in the petitioner's contention that the employer was bound by the action of the *379 father at the time of the contracting for the medical services rendered at the Johns Hopkins Hospital and subsequent thereto. The petitioner's father testified that his participation in the arrangements for the operation at Baltimore was prompted by his parental relationship and not on behalf of the corporate defendant; that he never discussed with Mr. Wilhelms the questions of payment of his son's medical bills or his lost wages. It seems clear that the information obtained by the father from discussions with his son in the home, was casual, coming to him as father and distinct from his position as outside superintendent. There is a complete absence of proof of any action by the corporation based upon the information the father received from the son. The record is barren of any evidence from which an inference can be drawn that the petitioner's father had any authority to act for and bind the employer. See Canda Mfg. Co. v. Woodbridge, 58 N.J.L. 134 (Sup. Ct. 1895); Willard v. Denise, 50 N.J. Eq. 482 (E. & A. 1892).
The timeliness of petitioner's claim, under the statute, being dependent upon the existence of a valid and established agreement authorizing the furnishing of medical services, the claim necessarily fails for want of probability of the existence of that agreement.
The judgment of the Union County Court is reversed.