ESSEX COUNTY COURT OF COMMON PLEAS.

JAMES REYNOLDS, PETITIONER-APPELLANT, v. PASSAIC VALLEY SEWERAGE COMMISSIONERS, RESPONDENT-APPELLEE.

Decided February 19, 1942.

For the petitioner-appellant, *George W. Wolin* (*Samuel J. Marantz,* of counsel).

For the respondent-appellee, *McCarter, English & Egner* (*Verling C. Enteman,* of counsel).

HARTSHORNE, C. P. J.  The issues here are both of fact and of law, the former whether petitioner's fall, resulting in the injuries for which he seeks compensation, was due to his tripping over a chair, or to an epileptic fit, the latter whether, even if the cause of the fall were epilepsy, it is nonetheless compensable, due to the contributing causal effect of the conditions of his employment.  This issue of law has not been expressly settled in this state, and is one as to which the courts of other jurisdictions differ.

We turn to the facts:  On February 1st, 1940, petitioner was a watchman for respondent, and as such used a small shanty, furnished him by respondent, to keep warm in winter, where there were an arm chair, a pot stove, and one or two stools and pails of coal.  Previously thereto, petitioner had had certain fainting spells, had suffered one or more para-

lytic strokes, affecting his entire right side, and had also suffered several epileptic fits, one on August 20th, 1938, another on October 11th, 1938, a third, after the fall, on March 25th, 1940, and possibly others. On the day in question he was seated in the arm chair in the shanty, when he claims he got up, or started to get up therefrom, to look outside, and was thereafter found by his superior, Callery, lying on his right side with his face pressed against the stove, which was searing his entire forehead and right cheek, while his left hand was waving the air. In fact, due to the cramped quarters of this small shanty, but five by six feet over all, petitioner seems to have become wedged in his fall, with the upper part of his body between the stove and the wall, which were but a foot apart, his legs, alone movable, in addition to his left arm, being pressed against the door. (Record, pages 102, 115, 116.) Despite this constant searing of his face, there is nothing to show he made a single outcry. In fact, the only reason he was found at all by Callery was due to the barking of a dog outside the shanty, the dog being evidently startled by the noise of the man's fall inside.

Petitioner himself offers the only direct testimony as to the cause of his fall. He says he had his left foot, his good one, hooked around the chair leg, and thus tripped when he started to get up. (Record, pages 151, 157.) But not only was the chair found undisturbed by Callery, as it probably would not have been had he thus tripped, but petitioner's physical demonstration before the Bureau, as indicated in the record, and as found by the Commissioner, does not show a tripping, but that he was upright on both feet before he fell. Indeed, it would seem improbable that a man with one good leg, his left, and one bad one, his right, would have sought to rise on the bad one rather than on the good one. In addition, not only is there substantial medical evidence, opinion to be sure, to the effect that it was petitioner's physical condition, specifically an epileptic fit, which caused his fall, but while petitioner's witnesses are unfortunately somewhat vague as to his physical condition following the accident, the fact that he made no outcry whatever, while this hot stove was burning into his face, would certainly seem to indicate he was in a fit,

as the doctors say. For while his speech was affected by his paralysis, he certainly could use his voice to make a noise. Somewhat to the same effect is the fact that he remained constantly on his right side, with his face pressed against the stove, despite this burning of his flesh. Though here it must be remembered that he could move only with difficulty, due to the paralysis of his right side. In short, with these inconsistencies, both in his own words and actions, as well as his physical demonstration before the Bureau as to how the accident occurred, this court must concur with the Bureau in finding that petitioner has not borne the necessary burden of proof that the accident was due to his tripping over the chair in the performance of his duties, rather than to an epileptic fit.

But even so, petitioner claims compensation on the ground that, though the immediate cause of the fall itself was one personal to him, the injuries were contributed to by the conditions of his employment. For not only was the hot stove dangerous in itself to anyone who might fall against it, but stationed as it was, in this tiny shanty, but five by six feet over all, with but a foot on either side between the stove and the wall, it is small wonder that petitioner, when he fell, had his head practically wedged against the stove, with his feet against the door. And though petitioner's paralytic and epileptic condition of course rendered him less able to extricate himself, this wedging, which increased the severity of his burns, might well have occurred to anyone who fell there. Thus even assuming, for the sake of argument, that petitioner might have been in the same room with such a stove while out of his employment, a purely supposititious situation, nevertheless the cramped quarters which caused the wedging were peculiar to his employment, rendering the conditions of his employment, with the stove, peculiarly dangerous to him or any other employee.

Hence it is claimed that "the employment was one of the contributing causes, without which the * * * [injuries] would not have happened." *Ciecwirz* v. *Public Service Electric and Gas Co.,* 128 *N. J. L.* 16. Similarly, the test has been stated to be whether "the employment contributed to the

injury or death." *Ciocca* v. *National Sugar Refining Co.* (*Court of Errors and Appeals*), 124 *Id.* 329, 335; 12 *Atl. Rep.* (*2d*) 130. And again, "The injury or death is related to or affected by the employment, that is to say, if but for the employment, it would not have occurred. * * * The work and the disease together contributed to the death." *Bollinger* v. *Wagaraw Building Supply Co.* (*Court of Errors and Appeals*), 122 *N. J. L.* 512, 520; 6 *Atl. Rep.* (*2d*) 396; *Molnar* v. *American Smelting and Refining Co.,* 127 *N. J. L.* 118; 21 *Atl. Rep.* (*2d*) 213; *affirmed* (*Court of Errors and Appeals*), 128 *N. J. L.* 11.

By the above, and many other cases, our courts have firmly established the principle that the test of compensability is the causal relationship, in whole or in part, between the employment and the injuries or death. While possibly in most cases it is the character of the work done, as distinguished from the conditions of the employment, which is in fact the causative compensable factor, this is by no means always the case. For instance, in the very last opinion rendered by our courts on this entire subject-matter (*Ciecwirz* v. *Public Service Electric and Gas Co., supra*) while the workman's pre-existing weak heart, a cause personal to him, was one of the factors contributing to the injury, the award was upheld because his employment, "shoveling up soil from a deep trench in an atmosphere of escaping gas," also contributed to his death. And while it was expressly found there, due to other evidence, that the workman was not overcome by gas, but by the strain of his exertions on his weakened heart, it would appear clear that had he, with this weak heart, been overcome by gas, compensation undoubtedly would have been awarded. *Manziano* v. *Public Service Gas Co.,* 92 *N. J. L.* 322; 105 *Atl. Rep.* 484; *Ridgeway* v. *Real Estate Operating Co.,* 15 *N. J. Mis. R.* 477; 192 *Atl. Rep.* 392; 121 *N. J. L.* 585; 3 *Atl. Rep.* (*2d*) 584; *Pierce* v. *Jersey Central Power and Light Co.,* 127 *N. J. L.* 71; 21 *Atl. Rep.* (*2d*) 311. If such were the case, the situation would then be on all fours with the case at bar, *i. e.,* where one of the contributory causes was personal to the workman, but the other, the conditions of his employment, rendered the case

compensable. And while the courts in the other cases above cited do not specifically speak of the compensation cause as involving the conditions of employment, as distinguished from the character of the work done, it is nevertheless clear that in some, at least, the conditions of employment were the causative compensable factor. For instance, the contributing cause was sunstroke in the *Ciocca* case, *supra,* and in the *Bollinger* case, *supra,* the sand and ashes constantly under foot. Thus in both cases, the sun overhead and the sand under foot, were simply dangerous conditions of employment, which constituted the causative compensable factor.

In addition, in several earlier cases, involving a somewhat different state of facts to be sure, the courts of this state have expressly held the conditions of employment to be a compensable factor. In *Zabriskie* v. *Erie Railroad Co.,* 86 *N. J. L.* 266, 270; 92 *Atl. Rep.* 385, our Court of Errors and Appeals held, "The act of the automobile driver, and the conditions of employment that required the deceased to cross a street, were proximate causes, the latter of which was an actual risk of the employment. * * * The fact that the accident may have been and probably was due to the negligence of the driver of the automobile, and perhaps also to the contributory negligence of the deceased [employee], tends to cloud the issue, but does not differentiate the situation from that of any workman who is required, in the performance of his work, to go into a dangerous place and incur the dangers connected with that place." In the *Zabriskie* case, in order to obtain toilet facilities, a necessity equivalent to warmth in winter, the workman was compelled to cross the street, where he was hit by an automobilist, disconnected from the employment. In *Mountain Ice Co.* v. *Durkin,* 6 *N. J. Mis. R.* 1111; 144 *Atl. Rep.* 6; 105 *N. J. L.* 636; 147 *Atl. Rep.* 451, the court held the injuries from a fall from a 35-foot platform, maintained by the employer, to be compensable, despite the fact that the immediate cause of the fall was unknown. But since such a place of danger was totally lacking in *Johnson* v. *Ulster Iron Works,* 9 *N. J. Mis. R.* 239; 153 *Atl. Rep.* 95; 109 *N. J. L.* 267; 160 *Atl. Rep.* 635, where petitioner fell on a bare floor, from a cause per-

sonal to himself, no compensation was there found to lie. Again, in *Newark Hair, &c., Co.* v. *Feldman,* 89 *N. J. L.* 504; 99 *Atl. Rep.* 602, it was solely the conditions of the employment which gave rise to compensation, since the fire, the initial cause, was disconnected with the employment.

In fact, our highest court, in *Hulley* v. *Moosbrugger,* 88 *N. J. L.* 161, 164; 95 *Atl. Rep.* 1007, has approved the principle laid down by the Massachusetts cases to the same effect, that: "It [the accidental injury] 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *McNichols' Case* (*Mass.*), 102 *N. E. Rep.* 697. This principle, as appears later, is the law not only in Massachusetts, but in England, and in the bulk of these United States where the question has arisen. For instance, in *Caswell's Case* (*Mass.*), 26 *N. E. Rep.* (2d) 328, the court expressly says, "An injury arises out of the employment if it arises out of the nature, conditions, obligations, or incidents of the employment; in other words, out of the employment looked at in any of its aspects." Similar is the language of the English courts: "The expression 'arising out of the employment' is not confined to the mere 'nature of the employment.' The expression, in my opinion, applies to the employment as such—to its nature, its conditions, its obligations, and its incidents. If, by reason of any of these, the workman is brought within the zone of special danger, and so injured or killed, it appears to me that the broad words of the statute, 'arising out of the employment,' apply." *Simpson or Thom* v. *Sinclair* (1917), A. C. 127; 10 *B. W. C. C.* 220, 235. "Where conditions of the employment, including the location of the place of work, constitute a factor, which in combination with other conditions produces accidental injury, the risk of such an injury is incident to the employment." *Connelly* v. *Samaritan Hospital* (*N. Y.*), 181 *N. E. Rep.* 76.

Nor is this consideration by the courts of the conditions of employment, as well as of the character of the work done, or of any other factors directly connected with the employment,

at all surprising. For we must remember that we are not dealing with the technical tortious concept of proximate cause, in considering those matters "arising out of the employment." Our courts have held, as far back as *Newcomb* v. *Albertson,* 85 *N. J. L.* 435; 89 *Atl. Rep.* 928, that "the cause of the injury under section 2 was the cause *sine qua non,* as distinguished from the proximate cause," *i. e.,* the "if but" rule, as more recently expressed. *Ciocca* v. *National Sugar Refining Co., supra.* To the same effect is *McDonough* v. *Sears, Roebuck & Co.,* 127 *N. J. L.* 158; 21 *Atl. Rep.* (2d) 314, where the court says, "Though this statutory cause of action is not predicated upon a violation of duty classable as negligence, and so the principle of liability for the natural and proximate results of such misconduct has no application, it is yet requisite that there be a chain of physical causation \* \* \*." And so we return to the test as stated in the *Ciecwirz* case, *supra*—whether "the employment [in any of its factors] was one of the contributing causes, without which the \* \* \* [injuries] would not have happened." (Bracketed words added.)

And yet even here the weight of authority has noted a distinction. The conditions of the employment, which contribute to the injury and render it compensable, must not only contribute thereto in fact, but they must contribute thereto in greater degree in, than out of, the employment. In other words, these employment conditions must constitute a hazard peculiar to the employment, either in that they do not exist out of the employment, or if they do exist out of the employment, in that the risk of danger therefrom is greater in the employment than out of the employment. If not, such risk, and the injury therefrom, cannot be said to "arise out of" the employment.

In fact, this principle has apparently been approved by our highest court through its quotation, in *Hulley* v. *Moosbrugger, supra,* of the following from the opinion in *McNichols' Case, supra* (at *p.* 164) : "[The injury which arises out of the employment] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which

the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood [or if common to the neighborhood, the employee must be peculiarly exposed thereto by reason of his employment.]" The bracketed words are supplied by this court, as in line with the great weight of authority. See, for instance, the rule laid down by the United States Supreme Court: "The fact that * * * the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree." *Cudahy Co.* v. *Parramore,* 263 *U. S.* 418, 424. In this case the court cites a series of English and American cases, quoting from *Anderson & Co.* v. *Adamson,* 50 *Sc. L. R.* 855, as follows: "If the position which the workman must necessarily occupy in connection with his work results in excessive exposure to the common risk, or if the continuity or exceptional amount of exposure aggravates the common risk, then it is open to conclude that the accident did not arise out of the common risk, but out of the employment."

In accordance with the above principle, and its restrictive distinction, the courts of this country and England have accordingly held compensable the following situations, where the initiatory cause of the incident, which ripened into the accident, was a disease personal to the employee and disconnected from the employment, but where the conditions of the employment were a definite contributing factor to the injuries or death: the fall of an epileptic, the conditions of whose employment caused him to fall down a flight of stairs (*Cusick's Case (Mass.),* 157 *N. E. Rep.* 596); the fall of an epileptic who was compelled to work near an open hatchway of a ship, the which fall contributed to the serious character of his injuries (*Wicks* v. *Dowell & Co.* (1905), 2 *K. B.* 225); the fall of a paralytic watchman into a fire, which he had built just outside his shanty to keep himself warm (a situation practically on all fours with the case at bar) (*Ervin* v. *Industrial Commission (Ohio),* 4 *N. E. Rep.* (2d) 22);

the fall of an epileptic, while using a hot water hose, whose epileptic fit caused the hot water to spray over and burn him (*President and Directors of Georgetown College v. Stone (Court of Appeals, District of Columbia), 59 Fed. Rep. (2d) 875*); the fall of an epileptic, who in his fall hit the welding machine at which he was working, causing a brain concussion (*Industrial Commission v. Nelson (Ohio), 186 N. E. Rep. 735*); a fall, due to personal illness, from a staging, elevated above the ground (*Gonier v. Chase Companies (Conn.), 115 Atl. Rep. 677*); the fall of an epileptic into a pit of hot cinders (*Rockford Hotel v. Industrial Commission (Ill.), 132 N. E. Rep. 759*); a fall, due to a cardiac condition, causing the workman to strike his head against the side of a table (*Connelly v. Samaritan Hospital, supra*); a fall incident to a personal disease, which caused the employee to be injured by the machine on which he worked (*Dow's Case (Mass.), 121 Id. 19*); a fall, due to personal illness, through a glass partition in the employees' rest room (*Sullivan's Case (Mass.), 134 Id. 406*). See, also, *Baltimore Towage and Lighterage Co. v. Shenton (Md.), 199 Atl. Rep. 806*.

On the other hand, and in accordance with the above distinction, compensation has been held not to lie in the following cases, where the conditions of employment did not differ from those to which the employee was exposed outside his employment, or where, if the conditions were the same, the employee's exposure thereto in his employment was not greater than on the outside. *Lander v. British United Shoe Machinery Co., Ltd., 26 B. W. C. C. 411*, where an epileptic fell on the hard floor of a urinal in his place of employment, the floor having been expressly found to be not a "dangerous place," but one of "perfect safety." Similar cases of falls, due to physical ailment, where the injury resulted from mere contact with the ground or floor, are *Cimino's Case (Mass.), 146 N. E. Rep. 245; Rozek's Case (Mass.), 200 Id. 903*, cited in a note in *Caswell's Case, supra*. Of course, the theory of the above distinction is not that the employer is to be held responsible for his default or negligence in permitting a special danger to the employee to arise in the employment. For the Workmen's Compensation Act specifically eliminates liability

because of default, and bases it upon the causative effect of the employment on the injury, regardless of personal fault. The theory of this distinction is that the conditions of employment do not substantially contribute to the injuries, if they do not increase such injuries beyond what would have followed the epileptic fall, had it occurred outside the employment. In other words, if the resultant injuries would have followed the epileptic fall anyway, even outside the employment, then the employment did not contribute thereto as a distinct, additional, causative factor, leaving the initiatory cause of the fall as the sole substantial cause, which, being personal to the employee, left the injuries non-compensable.

True, there are certain decisions which appear to override this distinction, and hold that the employment conditions contribute to the injury, and render it compensable, where they affect such injuries in fact, and regardless of whether the same injuries would have resulted outside the employment. *Savage* v. *St. Asden's Church (Conn.)*, 189 *Atl. Rep.* 599. And to such point is certain of the language of the court in the *Connelly* case, *supra*, where it indicates compensation would lie "though risk of similar injury is no greater in that employment than otherwise." Though the court elsewhere in the opinion enunciates the above distinction.

To the other extreme, on the contrary, are a few cases which look solely at the cause of the fall, and refuse to consider the employment itself in its effect on the injury or death, with the consequent conclusion that in all cases of the above character no compensation is permitted. *VanGorder* v. *Packard Motor (Mich.)*, 162 *N. W. Rep.* 107; *Brooker* v. *Industrial Commission (Cal.)*, 168 *Pac. Rep.* 126. But these cases are clearly contrary to the weight of authority, both English and American, and overlook the common-sense principle that in every-day life, most occurrences, accidental injuries or otherwise, are the result not of the single initiatory incident, but of several contributing factors.

Reverting, then, to the case at bar, it would appear that compensation should here lie, whether we apply the pragmatic rule of the effect in fact of the conditions of employment as a contributing factor to the injuries, regardless of the fact

that the same injuries would have resulted outside the employment, or whether we apply the rule enunciated by the great weight of authority throughout this country and England, which, in principle at least, has already been approved by the New Jersey courts. For it is indubitable that this hot stove created a definite danger to any watchman ·who might fall while at work in the shanty, and that this danger was increased by the cramped quarters of the shanty, which not only could, but did, serve to wedge the employee against the burning stove. This hot stove, in such peculiarly cramped quarters, thus created a risk peculiar to the employment, of particular danger to petitioner or any employee. True, it was more difficult for this particular employee, paralyzed and epileptic, to extricate himself from this wedging and continued searing of his face. But this wedging would have occurred, at least, initially, even to a well employee who might fall. Thus, it seems unnecessary ·to stress the decisions in this state and elsewhere, holding the health of the particular employee to be immaterial, since the act presupposes the employment of employees, diseased as well as healthy. *Hall* v. *Doremus,* 114 *N. J. L.* 47; *175 Atl. Rep.* 369; *Bernstein Furniture Co.* v. *Kelly,* 114 *N. J. L.* 500; *177 Atl. Rep.* 554; *affirmed,* 115 *N. J. L.* 500; *180 Atl. Rep.* 832; *Cusick's Case, supra.*

Compensation will accordingly be awarded the petitioner, but since the amount of same has not yet been determined, counsel will be heard thereon on notice.