LOUIS RUSSO, PETITIONER-RESPONDENT, v. UNITED STATES TRUCKING CORP., RESPONDENT-APPELLANT.

Argued December 9, 1957—Decided April 3, 1958.

Mr. *Harry Steiner* argued the cause for the respondent-appellant.

Mr. *Aaron Gordon* argued the cause for the petitioner-respondent (*Messrs. Florio & Marciaro,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is a petition for benefits under the Workmen's Compensation Law. The petitioner has suffered the loss of his right leg which was amputated above the knee. The injury is alleged to have resulted from two separate accidents sustained by the petitioner while in the respondent's employ. The Deputy Director found for the respondent. On appeal, the Hudson County Court after a trial *de novo* on the record reversed and entered a judgment of total and permanent disability premised upon his inability to wear an artificial limb and his deteriorated physical condition. The respondent then pursued an appeal to the Appellate Division, seeking a redetermination of the factual conclusion below. The Appellate Division refused to enter into such a re-evaluation of the evidence and in a *per curiam* opinion sustained the result reached by the County Court. The Appellate Division declared:

"The County Court accepted petitioner's proof as sufficient to warrant a favorable judgment and there is adequate evidence, if believed, to support the result. In the administration of the Workmen's Compensation Act, we must give great weight to the finding of that court. Otherwise it becomes little more than a conduit through which the record is passed on to this Division. In this case we do not believe that a *de novo* weighing of the evidence should be engaged in and the judgment is affirmed (with the qualifications noted) for the following reasons stated by Judge Duffy:"

Respondent then petitioned for and was granted certification. *25 N. J.* 46 (1957).

The issue on appeal concerns the proper scope of appellate review of factual determinations in workmen's compensation proceedings and its application to this case.

The court hopes by this opinion to lay down a simple formula for the consideration of the review of judgments of the Workmen's Compensation Division and to avoid the confusing refinements which have been developed in the intermediate reviewing courts since the 1947 Constitution and the supplementing rules thereunder.

The matter of three possible succeeding reviews has been the subject of controversy and is a legislative matter, but so long as such plan exists the duty in the reviewing of the Division's determination is clear.

Under the original Workmen's Compensation Act of 1911 compensation claims were heard in the County Courts of Common Pleas. *L. 1911, c. 95, § 18.* In 1918 the act was amended (*L. 1918, c. 149, p. 429*) to provide for the establishment of the Workmen's Compensation Bureau within the Department of Labor to hear claims, with a trial *de novo* in the Court of Common Pleas. *L. 1918, c. 149, § 19.* The trial *de novo* was not on the record but involved a full rehearing of the testimony of witnesses. See *Charlock v. M. W. Kellogg Co.,* 4 *N. J. Misc.* 260 (*Sup. Ct.* 1926). The Legislature in 1921 initiated the current practice, which was for the Common Pleas Court to determine the cause *de novo,* exclusively upon the transcript of the record and the testimony taken before the Bureau. *L. 1921, c. 229, § 7.* For a brief interlude of one year review in the Court of Common Pleas was eliminated, *L. 1931, c. 388, § 1,* only to be re-established by *L. 1932, c. 25, § 1.* In 1953 the act was amended providing only for the review in the County Court, but not specifying the nature of the review proceedings. *R. S.* 34:15–66, as amended by *L. 1953, c. 33, § 57.* The previous procedure of trial *de novo* on the record is now supplied by our rules. *R. R.* 5:2–5(*d*).

Appeals from the Common Pleas Courts were heard by the former Supreme Court by writ of *certiorari.* It is familiar history that the granting of the writ was discretionary, see *e. g., Post v. Anderson,* 111 *N. J. L.* 303 (*E. & A.* 1933), although a distressed litigant might have two opportunities for the granting of the writ by petitioning first to an individual justice of the Supreme Court and upon his refusal to the court *en banc.* See *Tweddell v. Village of South Orange,* 95 *N. J. L.* 327 (*Sup. Ct.* 1921). But the important point for our present consideration is that once the writ was granted the Supreme Court was required to re-evaluate the evidence. As stated by the Supreme Court

in *Anderson v. Federal Shipbuilding & Dry Dock Co.*, 118 *N. J. L.* 55, at *page* 56 (*Sup. Ct.* 1937):

"* * * The original Compensation act, *Pamph. L.* 1911, at *p.* 143 spoke of 'the jurisdiction of the Supreme Court to review questions of law by *certiorari*.' But this was evidently found to be too narrow, and at least as early as 1921 the language was changed to read 'to review questions of law and fact by *certiorari*.' *Pamph. L.* 1921, at *p.* 734. This brought the procedure in line with section 11 of the *Certiorari* Act (*Comp. Stat., p.* 406), and in view of such cases as *Pearson v. Armstrong Cork Co.*, 6 *N. J. Misc.* 976; *Mountain Ice Co. v. Durkin*, 6 *N. J. Misc.* 1111, affirmed 105 *N. J. L.* 636; *Voight v. McEwan Bros.*, 13 *N. J. Misc.* 587, affirmed 116 *N. J. L.* 218, and *Lazzio v. Primo Silk Co.*, 114 *N. J. L.* 450, 453, affirmed 115 *N. J. L.* 506, the rule may be considered as now settled that in compensation cases the Supreme Court can and will consider weight of evidence even when the two lower tribunals are in accord on findings of fact, though their conclusions, to use the phrase repeated in our reports, 'will not be lightly disturbed' where there is evidence to support them."

The 1947 *Constitution, Art.* VI, *Sec.* V, *par.* 4, implemented by rules of court, *R. R.* 4:88–1, have now made the granting of prerogative writs a matter of right, and as stated by Justice Heher in *Hager v. Weber*, 7 *N. J.* 201, at *page* 211 (1951):

"Now, by the Constitution of 1947, the common-law writ of error has been superseded by the appeal therein provided. *Article* VI, *Section* V, *paragraphs* 1, 2. Under paragraph 3 of the same section, the Supreme Court and the Appellate Division of the Superior Court may exercise 'such original jurisdiction as may be necessary to the complete determination of any cause on review.' This grant of original jurisdiction is significant of a design to provide a review of matters of fact as well as of law, in accordance with the historic function of an 'appeal.' For the history and the varied uses of the 'appeal' in American and English jurisprudence, see *Vaill v. McPhail*, 34 *R. I.* 361, 83 *A.* 1075 (1912). There is no ground whatever for supposing that the framers of the Constitution had in mind an 'appeal' in law cases that would merely perform the office of the old writ of error in mode and scope of review."

Our implementing rule, *R. R.* 1:5–4(*b*), made applicable to the Appellate Division by *R. R.* 2:5, affords no basis for an inference that it was the intendment of the new practice

to lessen the scope of review on factual matters in workmen's compensation proceedings.

█ It is the duty of the reviewing court to weigh the evidence and determine whether the claimant has sustained the burden of proof of an accident arising out of and in the course of his employment by a preponderance of the evidence. Full and respectful consideration of the views expressed, on both fact and law, by the Division and intervening appellate courts, shall be given.

R. R. 1:5–4(b) provides:

"On a review of any cause, criminal or civil, involving issues of fact not determined by the verdict of a jury, new or amended findings of fact may be made, but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Compare R. R. 4:88–13.

██ From a study of the entire record, it is the function and duty of the reviewing court to make a determination according to its considered judgment, and in doing so it is mandatory only to give due regard to the opportunity of the hearer of the evidence to judge of the credibility of the witnesses. A finding of fact in the Division or appellate courts does not lessen the duty of the appeal court to determine the facts and evaluate them by full investigation and analysis of the evidence so as to adjudge whether the general finding is consistent therewith, i. e., if upon such total consideration of the record and views expressed below, it is believed the judgment both in fact and the applicable law from which appeal is taken is correct, it should be affirmed; if the judgment is erroneous, it should be reversed or modified.

Accordingly, we will assay the evidence and determine whether the claimant has sustained his burden of proof.

█ Petitioner has alleged that two separate industrial accidents, one on August 5, 1954 and the other on August 24, 1954, resulted in injuries necessitating the amputation of his right leg above the knee on September 9, 1954.

Respondent has denied the occurrence of the accidents, and also the causal relation between the accidents alleged to have been sustained and the resultant injuries.

The expert medical testimony concerning causation is in direct contradiction. Much of the medical testimony revolves about whether or not an embolism or a thrombosis caused an occlusion in the right femoral artery on August 24, 1954 which eventually necessitated the amputation of petitioner's leg.

In the main, the doctors testifying for the petitioner supported the hypothesis of thrombosis caused by the traumatic insults of the two accidents, while the respondent's medical witnesses supported the hypothesis of an embolism of independent origin causing the injury.

It is unnecessary to resolve the dispute, however, since the medical experts for 'petitioner hypothesized the causal connection between the accidents and the injury upon a predicate that the accidents in fact occurred. They lend no independent credence to the occurrence of the accidents and since, as we believe, the petitioner has failed to establish by a fair preponderance of logically persuasive proof that the accidents in fact occurred, there is no reason to resolve this phase of the conflict. The petitioner's own medical witness admitted that of the two alleged accidents, the occurrence of August 24, 1954 was crucial to his recovery. The following is the question directed to Dr. Lieb on cross-examination and his response:

"Q. Doctor, if it should turn out that the injury alleged to have happened on August 24th did not occur, would you say that the injury that is alleged to have occurred on August 5th alone would have been sufficient to cause this, the necessity of amputation of the leg? A. No. I don't think so."

Petitioner was 60 years of age at the time of the hearing in 1955, and while he had an excellent work attendance record and appeared to be in good health prior to the alleged accidents, the proofs adduced on his behalf at the hearing show that he suffered from arteriosclerosis and diabetes.

Petitioner had been, prior to August 24, 1954, in respondent's employ for some 11 years as a mechanic's helper and garage-man. He testified that on August 5 he was engaged in guiding one of respondent's trucks into its garage at 75 Park Avenue, Hoboken. Petitioner was on the sidewalk opposite the garage. He first went to his right to see if any cars were coming and then turned towards his left side to see if the truck was aligned with the garage. He said that as he proceeded towards his left side, there were some barrels and garbage on the sidewalk, and he banged his right knee against one of the barrels, causing him to fall down on one knee. He attempted to break his fall by grabbing hold of one of the barrels, but his knee struck the sidewalk. He claimed that he felt pain in the right knee and that it was bleeding. The petitioner applied self-medication, lost no time from work, and did not report the incident to his employer. Petitioner's recollection of the time of the occurrence was hazy. He first testified that it occurred at 11:00 A. M., but he later changed the time to 4:30 P. M.

Petitioner's testimony was buttressed by Mrs. Lynch, a housewife who resided in the same tenement house with the petitioner located near the garage of the respondent. Mrs. Lynch testified that on August 5, 1954, as she was coming home from the store, she witnessed the accident. Mrs. Lynch said that she saw the petitioner fall back over the garbage and hold onto the barrel and then fall forward and that he got up rubbing both knees. She placed the time of the occurrence at approximately 11 A. M., but was certain that in any event it was prior to noontime.

Respondent called as a witness Edward Bray, its dispatcher and the man in charge of sending the trucks to the Park Avenue Garage. Mr. Bray had the records of each truck directed into the garage on August 5, the driver of the truck, and the time of the truck's arrival at the garage. From his testimony it was developed that seven drivers entered the garage on that date. Bray's records further revealed that in point of time the earliest arrival at the garage on August 5 was at approximately 3:50 P. M.

Respondent also called to the stand three of the seven drivers who backed into the garage on the date of the alleged accident. Their testimony was substantially similar. Each said that he knew the petitioner, that in August of 1954 he could recall no instance when petitioner fell over barrels and garbage while guiding his truck into the garage, and that he did not recall even having seen barrels or garbage on the sidewalk opposite the garage. It was developed that a school and playground was located directly across from the garage. The parties stipulated that the remaining four drivers who, by the respondent's records backed into the garage on August 5, would testify in a similar vein.

We are convinced that the persuasive proofs lie with the respondent, *i. e.,* that no accident occurred on August 5. It is highly unlikely that barrels and garbage would line the sidewalk adjacent to a school and playground, thus lending credence to the testimony of the drivers that they had not, at any time, seen those articles on the sidewalk opposite the garage. It should be noted that the petitioner gave a slightly different version of the incident to Dr. McLean two days before his discharge from the hospital, which was noted in the hospital records as follows:

"Sept. 23, 1954. Patient states that on August 5, 1954, while directing a truck into the garage, *he ran into a chair* that was on the sidewalk and hurt his right leg, but continued to work but states that he had pain in his leg that night. The next day he went to work and the day following until he had a sudden pain in his leg August 24 and was taken to the hospital." (Emphasis supplied)

The testimony relating to the time of the accident is also important. If the alleged accident occurred as petitioner first testified, prior to the noon hour, it is contradicted by the record cards of the respondent which indicate that no truck was backed into the garage prior to 3:50 P. M. on August 5, and if it occurred at 4:30 P. M., as petitioner later testified, then Mrs. Lynch's testimony is directly contradictory.

Lastly, there is the Deputy Director's estimate of the credibility of the witnesses. His opinion reads in pertinent part:

"So much for the accident of August 5th, 1954. And at this juncture it is my finding, from a consideration of the testimony relating to that alleged accident, that the burden of proof has not been met by the petitioner, and he has not established, by the weight of evidence required, that he met with an injury due to an accident arising out of and in the course of his employment on the date alleged. I was not too impressed with the testimony of Mrs. Lynch and the testimony of the drivers and Mr. Bray dispels any doubt in my mind regarding the occurrence of an accident."

The determination of whether the accident of August 24 occurred involves a resolution of a dispute in testimony between the petitioner and one George Peterson, a foreman and mechanic for the respondent, who at the time of the hearing was retired. The petitioner's version of the occurrence is that on August 24, while he was checking a battery on one of the trucks at the company's parking lot on Pavonia Avenue near the Erie Street ferry in Hoboken, the battery cover, an iron plate, slipped from his hands and landed on his right knee. He testified that he was kneeling at the time with his left knee resting on the floor and his right knee bent. The edge of the battery plate which was approximately 1½ feet long, 1 foot wide and 1/64th or 1/32nd of an inch thick and weighed about three pounds, struck his knee. The resulting pain was immediate, and so great that he could not get up from his kneeling position. Petitioner further testified that Mr. Peterson helped him up from the ground, took him home and later called an ambulance for him. At the time of the accident the petitioner said that Peterson was working about a block and a half from him.

Peterson told a different story. He testified that at the time of the incident he was working under a truck about 25 feet away from the petitioner when the petitioner called out to him that he had a pain in his leg. Peterson went over to the petitioner who, he said, was slightly bent over and not kneeling, and brought him over to sit down for

a while in a little truck he kept near by.  After about five minutes the petitioner complained that the pain was getting worse and Peterson went over and lifted up his pants leg.  Peterson testified "I didn't like the look of the leg.  The leg turned like white."  He thereupon took the petitioner home and called an ambulance.

In determining where the probabilities lie it is significant that the petitioner, upon entrance to the hospital, failed to mention any accident which had occurred.  An interne took down the following history:

"Personal History.  August 24, 1954.  Room 208.  Chief complaint: sudden severe pain of the right leg.  Present illness: Condition started suddenly as sudden cramplike pain which became severe.  This was continuous, accompanied by gradual change in color and temperature of the affected right leg.  Was brought to the hospital in this condition."

Petitioner seeks to excuse this lapse by indicating that he was suffering excruciating pain at the time the report was taken.  But even so, he failed on another occasion, *i. e.,* in the report previously referred to given to Dr. McLean two days before his discharge, to make any mention of an accident on August 24, although he did refer to an accident on August 5.  It would seem that the second accident, where the pain ensuing was immediate and caused him to be taken to the hospital would be the one that would be most logically mentioned.

And again we refer to the Deputy Director's estimate on the crucial issue of the credibility of the only witness to the events which transpired.  In referring to Mr. Peterson, the Deputy Director said:

"At this juncture I should like to observe for the record that I have had ample opportunity in many years of hearing compensation cases of observing witnesses, particularly their demeanor and honesty and integrity, and I have seldom, if ever, been impressed with any witness as much as I have been with Mr. Peterson."

From an independent study of the entire record, and giving due regard to the opportunity of the Deputy Director to judge of the credibility of the witnesses, we are satisfied

that the petitioner has not sustained his burden as to the occurrence of the accidents.

The judgment of the Appellate Division is reversed, resulting in a reinstatement of the judgment of the Workmen's Compensation Division.

Although Justice WACHENFELD votes to affirm, he has authorized the statement that, as to the procedural aspects of the case, he joins in the expression in this opinion.

WEINTRAUB, C. J. (concurring). I concur in the essence of the majority opinion but since I differ with it in some respects and with the dissenting opinion in *Ricciardi v. Marcalus Manufacturing Company*, 26 *N. J.* 445 (1958), also decided today, I feel I should state my views.

The dissenting opinion differentiates between appellate review of fact findings of an agency and fact findings of a judge sitting without a jury. Even in the absence of a valid legislative restraint upon the judicial role, there is a reluctance to interfere with agency findings. Several considerations so suggest. The subject matter may be within the peculiar expertise of the agency; the legislative or regulatory aspects of the action taken may preponderate over the judicial element or be inseparable from it; and a ready disposition to intervene may encourage appeals in an area in which the public interest demands expeditious solution of the controversy. These considerations are not uniformly present and probably the judge's estimate of the particular agency will always be a silent variable.

The dissenting opinion concludes the Appellate Division should apply the test whether the factual findings are supported by "substantial evidence on the whole record." Assuming that standard is significantly different from the one applicable to review of a trial judge, I do not see how the Appellate Division may approach a workmen's compensation case on the thesis that an agency finding is involved. The Legislature commanded a trial *de novo* in the County Court on the record made in the Workmen's Compensation Division, and despite differences in the phrasing of the

repealed statute and our rule of court, the latter was intended and has been understood to repeat the legislative direction. Surely we cannot say that the Appellate Division shall review the compensation award upon the basis of "substantial evidence on the whole record" and thereby reverse a County Court which correctly reached another result upon the *"de novo"* approach. Nor can we convert the County Court into an administrative agency and thus apply the more limited type of review to its action. The fact is that the Legislature and this court by its rule provided for a settlement of the dispute in the County Court sitting as such, and the judgment of that court is a judicial one. And, it may be added, the nature of the controversy before the Deputy Director is wholly judicial, indistinguishable in that respect from the conventional suit by one citizen against another. I agree that compensation cases should be concluded promptly, but I cannot ignore the policy decision in favor of a trial *de novo* within the judicial branch.

The judgment of the predecessor of the present County Court was reviewable by *certiorari* under the former constitutional system. The *Constitution* of 1947, *Art.* VI, *Sec.* V, *par.* 4, provides for a review as of right in matters formerly reviewable by prerogative writs, but I cannot find therein a prescription of the type of review to be accorded with respect to facts. The cited paragraph provides that "review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court." The right to be heard is assured; the extent of the review remains unspecified, and if one should believe that there was secured the precise review which was furnished prior to the present Constitution upon a writ of *certiorari,* still the solution of the present issue would not be advanced since judicial expressions under the former system invite the very question we are now debating.

Nor, for that matter, can I find direction in our rules of court. *R. R.* 1:5–4(*b*) relating to appeals says that "new or amended findings of fact *may* be made, but due regard shall be given to the opportunity of the trial court

to judge of the credibility of the witnesses," while *R. R.* 4:88–13, relating to reviews in lieu of prerogative writ, if it be deemed applicable, states the court "shall have power to review the facts and make independent findings thereon, which power *may* be exercised by it to such extent as the interests of justice may require." What remains to be answered is the question, when does "may" become "should"?

The "substantial evidence" test is not explicit or implicit in either rule, but let us examine that approach. If "substantial evidence" meant evidence sufficient to take a case to the jury, *Davis, Administrative Law* (1951), § 254, *p.* 914, I would have no difficulty in differentiating the review of the fact findings of a trial judge. But I understand the dissenting opinion in *Ricciardi* would require more than "substantial evidence" in the restricted sense just described; it would demand "substantial evidence on the whole record," a standard which would entail a more extensive, qualitative weighing of the proof. See *Universal Camera Corp. v. National Labor Relations Board,* 340 *U. S.* 474, 71 *S. Ct.* 456, 95 *L. Ed.* 456 (1951). At what point, in that process, would supporting evidence become sufficient? I can understand that in a given case the appellate judge could conclude that he would have decided the matter differently if he sat originally and yet is not sufficiently moved to upset the result. But an appellate judge reviewing a trial court commonly finds himself in the same posture and hence affirms. Unless the margin between the two approaches can be clearly defined, it may not be worth the confusion which is likely to follow. In any event, the suggested test cannot be pertinent in a compensation matter so long as the "administrative" aspect is complicated by the circumstance that the County Court sits *de novo*.

We are in agreement that the judges of the Appellate Division must read the record and that a qualitative weighing process must ensue. At that point we seem to part, although perhaps the difference is more verbal than real.

I incline to believe that a judge will do what he thinks he should, no matter how we try to corral him. Whether he will disturb the findings depends upon what is really pivotal in the case as he sees it. If the result turns upon credibility, he will allow for the opportunity of the trier of the facts to observe the witness. If the crux is the validity of inferences, he probably will defer to the trier of the facts if the treatment is a reasonable one. He will consider the Deputy Director's greater experience with medical issues. If, however, he believes the facts were misconceived or there was a failure to note and give effect to a vital fact, I think he would disturb the judgment. The patterns vary. The most that can be said is that an appellate judge should and will sustain the factual findings unless he is persuaded upon the sundry aspects of the case that the trier of the facts was wrong.

Where the Deputy Director and the County Court concur in the fact findings, the appellate judge will place in the scale the circumstance that another mind upon a study of the record agreed with the Deputy Director. The chances of persuading the Appellate Division that the findings should be disturbed are considerably lessened, not because of some imperative, but because another makeweight heightens the reviewer's reluctance to disagree. If the County Court and Deputy Director reach contrary results, no fixed rule of "determinative" weight can be attached to either tribunal's action. The appellate judge will simply give such weight to the action of each tribunal as the particular circumstances and his own reaction to them suggest. I doubt that we will profit by attempting to go beyond the simple proposition that the Appellate Division, after weighing all pertinent factors, will affirm unless it is persuaded that the judgment before it is wrong.

WEINTRAUB, C. J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING and PROCTOR—4.

*For affirmance*—Justice WACHENFELD—1.