53 N.J. Super. 414 (1959)
147 A.2d 579
ANDREW MASKO, PETITIONER-APPELLEE,
v.
BARNETT FOUNDRY & MACHINE CO., RESPONDENT-APPELLANT.
ANDREW MASKO, PETITIONER-CROSS-APPELLANT,
v.
M.H. DETRICK CO., AND ATLAS FOUNDRY CO., RESPONDENTS-CROSS-APPELLEES.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1958.
Decided January 9, 1959.
*415 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Edward B. Meredith argued the cause for respondent-appellant.
Mr. Seymour B. Jacobs argued the cause for petitioner-appellee and cross-appellant (Mr. Fred Freeman, attorney; Mr. Jacobs on the brief).
*416 The opinion of the court was delivered by FREUND, J.A.D.
Andrew Masko filed petitions for workmen's compensation benefits under the occupational disease statute, N.J.S.A. 34:15-31, against three former employers, M.H. Detrick Co., Atlas Foundry Co. and Barnett Foundry & Machine Co. After a hearing in the Workmen's Compensation Division, the Deputy Director dismissed the petitions, principally on the ground that the petitioner had failed to sustain the burden of proof. On appeal to and trial de novo before the Essex County Court, the dismissal as to M.H. Detrick Co. and Atlas Foundry Co. was affirmed, but the judgment in favor of Barnett Foundry & Machine Co. was reversed and an award made in favor of the petitioner. The respondent, Barnett, appeals from the judgment entered against it, and the petitioner cross-appeals from the dismissal against Detrick and Atlas in the contingency that they are to be held liable with Barnett.
The petitioner is admittedly totally and permanently disabled by reason of incurable active tuberculosis. Masko claimed, and the County Court found, that the tuberculosis had been dormant and latent; that during his employment as a molder by each of the respondents he was exposed to silica dioxide causing silicosis, an occupational disease, which in its progressive third stage activated the dormant tuberculosis; that both were causally related to his disability which occurred from and after February 17, 1955 when he was in the employ of Barnett. The court found that "because of petitioner's susceptibility, the condition in the respondents' plants each contributed to and were sufficient to have caused petitioner's silicosis to progress to third stage and flare up." On February 17, 1955 the petitioner also suffered from an attack of virus pneumonia, disconnected from his employment, and which the court declared probably also contributed to his physical break-down. Appellant Barnett, however, claims that the petitioner's conceded disabled state arose from the virus pneumonia and that the petitioner failed to prove any causal relationship between his disability and his work with the respondents. All three *417 of the respondents are insured by the same workmen's compensation insurance carrier.
Typical of many workmen's compensation cases, there is a sharp division of medical opinion in this case between the physicians for the petitioner and respondents' medical witnesses. There is no disagreement as to his existing disability, only as to whether the necessary causal relation between it and the employment exists. See Gargiulo v. Gargiulo, 13 N.J. 8, 12 (1953). Nor is there any substantial disagreement concerning the nature of the petitioner's work and the surroundings in which it was performed.
Our duty is to study the entire record, to weigh the evidence and to determine whether the petitioner has sustained the burden of proving by a preponderance of the probabilities that the silicosis from which he suffered arose out of and in the course of his employment, N.J.S.A. 34:15-31, and whether this was one of the contributing causes which activated the dormant tuberculosis. Russo v. United States Trucking Corp., 26 N.J. 430, 435 (1958); Ricciardi v. Marcalus Mfg. Co., 26 N.J. 445, 447 (1958); Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 139 (1958); Bober v. Independent Plating Corp., 28 N.J. 160, 168 (1958).
The petitioner, about 61 years of age, is a molder by trade and has worked in a number of foundries for about 44 years. Insofar as the three respondents are concerned, he worked for M.H. Detrick Co. for about a year and one-half, 1952-1954, when his employment terminated because of work shortage. He then worked for Atlas for three weeks in 1954 and left for the same reason. Finally, he was employed by Barnett Foundry on February 8, 1955, and worked for only nine days when he became ill and disabled on February 17, 1955.
Masko testified that in the foundries in which he worked over the 44 years, his job was always approximately the same. His descriptions of the work at the Detrick, Atlas and Barnett foundries, therefore, can be taken as descriptive *418 of the work which, over this long period, caused the development of silicosis. Apparently, he would mix non-toxic powder with clay, composed mostly of sand, which is silicate, beat it into a mold, and then spray away the excess particles with an air gun. The use of the air gun caused the powder, including graphite sometimes used as an abrasive to smooth the surfaces, to fly into his nose and mouth. The atmosphere would be filled with dust to such an extent that "one couldn't see the other worker." The inhalation caused petitioner to "cough very heavily, and I keep coughing until finally the forms are black, or the contents comes out either through my nose or through my mouth." In the Barnett Foundry where petitioner last worked and where he became ill, he made large castings by the same process and used black powder with a brush and air hose. Masko further testified:
"And as it blew, it all went up to my face * * * I coughed, and the black  could I say mucus? * * * Phlegm, until [I] felt the little breathing coming through. Through the nose and through the mouth."
At which stage in his 44-year career as molder the disease began, it is impossible to say. The medical testimony indicates that it is a cumulative disease, progressing in severity as there is an increase in exposure to the harmful dust.
Barnett concedes that the petitioner has been exposed to silicon dioxide and other specific pathogenic dusts during much of his employment career. Yet it points out that Masko's claim is against three particular foundries, not an industry, and that liability must be charged only against those foundries in which Masko actually was subjected to a harmful exposure. In this connection, respondent admits that Masko encountered dust and powders in the foundries in question, but it claims that atmospheric tests made revealed no hazardous or free silicate dust (i.e., in the air) which could have contributed to the disease. Although it is true that the testimony emphasized it was the non-toxic powder and graphite that entered Masko's nose and mouth, *419 we find it incredible that no sand, even if it were moist at the time, would be blown around. It was respondents' own chemical engineer who conceded that if any silica dust were left on the outside of the mold, the air gun would blow it into the air.
Moreover, the tests referred to were made at the Detrick plant, and it must be agreed that it was an unusually clean foundry. But no such evidence was offered by Atlas or Barnett regarding the conditions in their plants, except that of a safety inspector who testified that there was not such a presence of silica as would violate state safety regulations. This inspector further testified that the dust conditions at Barnett were "just as any average foundry." In the absence of a showing to the contrary, we are compelled to conclude that petitioner did inhale silicate dust in the latter two foundries. We need not, therefore, consider petitioner's argument that it is stretching the imagination to find that he was exposed to toxic dust for some 40 years but, by some coincidence, not in his last three employments.
Thus far, we have determined that from a preponderance of the probabilities it has been sufficiently demonstrated that the petitioner was exposed to silicate dust at the Barnett Foundry. Even if this were not the case, however, we would not be prepared to state categorically that the petitioner has not otherwise borne the burden of proof as to causal relation. We have in mind the distinct possibility that the exposure even to non-silicate particles of dust, sand, clay, powder, or graphite had the requisite adverse effect upon one who had for so long inhaled silicate particles. In this regard, the following testimony by Dr. Saul Lieb is significant:
"Q. Well, assume, Doctor, that the powders themselves have no toxic effect. What effect if any would the mere inhalation of these powders have on the respiratory system?

* * * * * * * *
The Witness: Well, the inhalation of dust is inadvisable in a man who already has third stage silicosis, and even if that dust is of the so-called non-specific type, not silica, depending on the quantity and amount with which this is inhaled, one would expect harmful effects in proportion to such inhalation. * * * If he didn't *420 work in silicon dioxide as such, there was then no additional exposure to it, if there was none; but if there was dust that was inhaled over a period of nine days in his foundry work, it certainly added to the amount of reaction in his lungs, in proportion to the amount of dust that was inhaled."
Bearing in mind, then, that each exposure adds cumulatively to the diseased condition of the lungs, we cannot agree that the nine-day employment at the Barnett Foundry was so slight an exposure as not to have contributed to Masko's silicosis. Were we to exonerate Barnett, we could not help but become involved in a futile search for an amorphous "causation," a search clearly subversive of the philosophy expressed in Textileather Corp. v. Great American Indemnity Co., 108 N.J.L. 121 (E. & A. 1931), and fully re-examined in Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J. Super. 187, 202 et seq. (App. Div. 1958), certification denied 27 N.J. 398 (1958).
We next consider Barnett's contention that Masko's disability arose as the result of a virus pneumonia disassociated from his employment. Neither the petitioner nor his last employer, Barnett, was aware of petitioner's affliction. Before beginning work, he was given a physical examination by Barnett's doctor, and he went to work the next day. Petitioner was well enough to work and did work at the Barnett Foundry under the above-described conditions for nine days. On February 17, 1955 he did not feel well but went to work nevertheless. At the end of the day he had a fever and could not stop coughing. He called a Dr. Meinhard who placed him in Clara Maass Hospital for viral pneumonia. The X-ray films taken upon admission led to "findings of enlarged heart, silicosis of the lungs and pulmonary emphysema." Dr. Meinhard was not called as a witness.
On May 31, 1955 Dr. Anthony D. Crecca, a chest specialist, became petitioner's treating physician and he continues to be such. At that time the signs of acute virus infection had cleared. Dr. Crecca placed petitioner in St. Michael's Hospital from June 5, 1955 until June 22, 1955, and again from August 18 to 28, 1955. From subjective and objective *421 examinations and tests, his diagnosis was silicosis, pulmonary emphysema and enlarged heart. The first appearance of positive sputum was in June 1956, when Dr. Crecca diagnosed that petitioner was suffering from active tuberculosis. The hospital records, dated June 22, 1955, long prior to the current litigation, show the diagnosis of silicosis and emphysema obstructive. When the definite symptoms of active tuberculosis appeared in June 1956, the petitioner had long been free of any virus; therefore, the petitioner's medical witnesses and the County Court concluded that it is improbable that the virus activated petitioner's dormant tuberculosis, as the respondents contend. It was generally agreed that persons suffering from silicosis become prey to activation of dormant tuberculosis.
Two other doctors testified on petitioner's behalf, Dr. Thomas J. Ormsby, a specialist in chest diseases and chief of the Chest Clinic at St. Michael's Hospital, and, as mentioned, Dr. Saul Lieb, an internist. In addition, two reports of Dr. Emanuel Klosk, also a specialist in internal medicine, were received in evidence by consent of counsel in lieu of his appearance. In summary, they testified that Masko is suffering from silico-tuberculosis which is due to his exposure to siliceous dust in his occupation as molder and which had developed into third-stage silicosis; that this disease progresses insidiously and that a person could continue working without being aware of this condition; that this state makes him more susceptible to the onset of a complicating infection; that the virus pneumonia triggered the active stage of the silicosis and this in turn activated the dormant tuberculosis; and, the fact that the viral pneumonia had cleared long before the positive symptoms of tuberculosis were manifested negated the theory that it was the virus pneumonia which activated the tuberculosis and confirmed their opinion that the third-stage silicosis was the cause of or the factor contributing to the disabling disease.
Appellant produced four medical witnesses, Drs. Albert B. Tucker, Harry J. White, Asher Yaguda and Andrew C. *422 Ruoff. Drs. Yaguda and Ruoff both examined the petitioner but once on January 17, 1956; Dr. White never examined him; and Dr. Tucker examined him once on November 19, 1956 and read the X-rays. He found silicosis and active tuberculosis. He said that silicosis may progress through its first and second stages without complaint from the victim and that his resistance is lowered to infections and tuberculosis. While these doctors agreed with some of the material elements of the petitioner's case, in the main they concluded that it was the employment-disconnected and non-compensable virus pneumonia which triggered the tuberculosis into activity and not the silicosis.
We, however, find the testimony of petitioner's physicians and the hospital records more convincing than the evidence presented by appellant.
"In the process of evaluation, a criterion of recognized significance is the greater opportunity of a treating physician, as compared with a doctor who conducts a single examination in order to become an expert medical witness, to know, understand and decide upon the producing cause of the patient's condition. Fusco v. Cambridge Piece Dyeing Corp., 135 N.J.L. 160, 162 (E. & A. 1947)." Bober v. Independent Plating Corp., supra, 28 N.J. at page 167.
Aside from the fact that Dr. Crecca testified as Masko's treating physician rather than as an expert and that his testimony was substantiated by the hospital records, two other considerations lead us to the conclusion that the testimony of petitioner's medical witnesses is of greater probative value than that of respondents' doctors. In the first place, respondents' four medical experts answered to hypothetical questions which assumed that Masko had not inhaled any silicon at the three foundries in question and, in addition, assumed that Masko had not complained of any physical ailments whatsoever prior to February 17, 1955. These hypotheses have no foundation in the evidence. As we have seen, he did inhale silicon at the Atlas and Barnett plants. And while the petitioner did testify he was not ill prior to the February 17 date, it is clear that he was equating *423 "illness" with inability to work and that he was, in fact, suffering from silicosis throughout the month of February 1955. Barnett's contention that Masko was in excellent health in that month and that his present condition is solely attributable to the pneumonia contracted at that time fails to account for the record of the Clara Maass Hospital revealing a diagnosis of "Silicosis  Complicating pulm TB must be considered."
In the second place, each of the respondents' doctors classified Masko's silicosis as either "second-stage" or "first-stage." They based this opinion primarily on two factors: the absence of symptoms or complaints of the disease and the absence of extensive emphysema. The first is clearly not true. And as to the emphysema (a condition in which air is trapped in portions of the lung, due to closure of the air passages), Dr. Crecca's testimony and the records of the St. Michael's Hospital prove that petitioner was suffering from emphysema and that, as a result, the testimony of respondents' experts is inaccurate.
It is, of course, sufficient if the evidence establishes with reasonable probability, not certainty, that the employment caused or proximately contributed to the condition of the disabling disease. Ciuba v. Irvington Varnish & Insulator Co., supra, 27 N.J. at page 139. From our study and review of the record we conclude that the preponderance of the credible evidence supports the conclusion that Masko, in the course of his employment as a molder, was exposed to silicate particles causing silicosis which operated upon and activated his dormant tuberculosis, and that his disability is compensable.
The only other issue is whether the court below was correct in awarding compensation solely against appellant, Barnett Foundry & Machine Co., petitioner's last employer, and in whose employ he became disabled; or whether the award should be apportioned among his successive employers in whose foundries he had also been exposed to the harmful dust. In this jurisdiction it is settled that there is no apportionment of liability between successive employers or *424 insurers for an occupational disease contracted by an employee, and that
"* * * full liability for permanent disability [fastens] upon that insurer which was on a risk at the time the employee ceased work, absolving any prior insurers regardless of the extremity of progression of the disease, short of cessation of work, during their coverage, and without apparent concern for the shortness of the period of coverage by the last insurer * * * [B]ecause the development of occupational diseases is characteristically gradual. but variable in different diseases and with different persons, the earlier stages being frequently undetectable, the only rule which would insure the benevolent legislative objective of recovery in every meritorious case was one which would fix liability at the single and easily determinable point when there was inability to work or death."
Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J. Super. 187, 202-04 (App. Div.), certification denied 27 N.J. 398 (1958), wherein the rationale of the rule and relevant decisions are fully discussed.
We conclude that the proofs established exposure to silica particles during the short interval petitioner was employed by appellant, and that it was during this last employment that he became ill, ceased work, and his disability occurred. A careful study of the record leaves us with the firm conviction that the award was just.
The judgment of the Essex County Court is affirmed.